JERROLD H. MEYER, PLAINTIFF-RESPONDENT, v. STANDARD ACCIDENT INSURANCE COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued October 18 and 19, 1934—Decided February 12, 1935.

For the appellant, *Congleton, Stallman & Hoover.*

For the respondent, *Saul & Joseph E. Cohn.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered in the Supreme Court for the sum of $2,760.48 and costs, upon a verdict found by the trial court sitting in the Essex Circuit without a jury, in favor of the plaintiff and against the defendant.

The case was submitted on an agreed state of facts.

Jerrold H. Meyer (hereinafter designated Meyer), the plaintiff, as owner, entered into an agreement with Philco Construction Company (hereinafter designated Philco Company) for the construction of certain buildings, for which Meyer was to pay Philco Company the sum of $55,000 in certain installments at agreed times as the work progressed; the final installment of $15,000 was not to be paid until the building was fully completed in compliance with the plans and specifications. The contract provided for advances in such payments, but provided always that in each case a certificate of the architect be produced showing the work done according to the specifications, and the final certificate of the

architect was not to be issued "until the contractor has furnished satisfactory evidence that there are no outstanding liens or claims for materials furnished or labor performed on any part of his work."

The contract and specifications were duly filed in the clerk's office of Essex county on June 3d, 1930.

Under the terms of the contract the Philco Company agreed "to obtain and furnish an indemnity bond covering the faithful performance and the completion of this contract in compliance with the plans and specifications."

Accordingly, the Philco Company, as principal, and the appellant, Standard Accident Insurance Company (hereinafter designated as Insurance Company), as surety, entered into a written obligation with Meyer in the amount of $55,000, on the following conditions: "the said Philco Construction Company shall well and faithfully do and perform the things agreed by them to be done and performed according to the terms of said contract, and shall pay all lawful claims of subcontractors, materialmen and laborers, for labor performed and materials furnished in the carrying forward, performing or completing of said contract, we agreeing and assenting that this undertaking shall be for the benefit of any materialman or laborer having a just claim, as well as for the obligee herein."

The contract above mentioned was specifically made a part of this bond, and the two must be read together and construed as a whole. *Standard Gas Power Corporation* v. *New England Casualty Co.*, 90 *N. J. L.* 570; *Skillman* v. *U. S. Fidelity & Guaranty Co.*, 101 *Id.* 511.

On October 9th, 1930, the Decker Building Material Company (hereinafter designated as Decker Company) filed a stop-notice in the office of the clerk of Essex County, and two days later served a copy of the same on the plaintiff Meyer. Said notice made claim for $2,142.19 for materials furnished to the Philco Company which were used in the construction of the buildings.

The Philco Company paid Decker Company $500 on account after the notice was served, leaving a balance due

thereon of $1,642.19. Meyer, at the time of the filing of said stop-notice, had paid out to the Philco Company, or its assignees, all of the moneys due or to become due on the contract except the sum of $7,290. Before October 9th, 1930, the plaintiff had been served with and received certain orders and assignments given by the Philco Company to various subcontractors. After being served with the Decker Company stop-notice, Meyer expended the remaining sum of $7,290, without any architect's certificate, by payment to the holders of the said assignments or orders, but did not honor or pay the claim of the Decker Company.

The Decker Company thereupon brought suit and recovered judgment against the Philco Company for the balance due on its claim, and issued execution thereon, which was returned unsatisfied.

The Decker Company also instituted suit against Meyer, who filed an answer claiming that he had expended the fund and had no moneys owing to the Philco Company.

The late Chief Justice Gummere struck out this answer, and this court on appeal affirmed the judgment entered in the Supreme Court, in an opinion reported in 109 *N. J. L.* 408, in which it was held that under the sixth section of the Mechanics' Lien act a stop-notice materialman had priority over an assignee or person having an order. Mr. Justice Donges, who delivered the opinion for the court, said: "There is nothing in the proofs to show that the sums of money in question were actually due to the subcontractors assignees, but it clearly appears that the money was still for all practical purposes in the hands of the owner who could not disregard the stop-notice and pay subcontractors who had orders or assignments."

Upon paying the judgment obtained by the Decker Company against him, Meyer brought this suit against the defendant Insurance Company as surety on the Philco Company bond to recover the amount of the judgment, with $500 expended for counsel fees. From the judgment entered in favor of Meyer, the Insurance Company appeals and sets forth eight grounds of appeal, all of which contend generally,

that the judgment was erroneous in the light of the stipulated facts, and specifically, that payment of the orders and assignments as against the claim of the Decker Company was an act sufficient to discharge the defendant of liability on the bond.

By the terms of the contract and bond the defendant Insurance Company became surety, up to the amount of $55,000, that the Philco Company would faithfully perform the contract and pay all just and lawful claims of subcontractors, materialmen, and laborers. The latter obligation was extended for the benefit of such materialmen and laborers. The plaintiff, Meyer, on his part, was bound to make payments on the contract according to the terms thereof, and in accordance with the existing and pertinent law, so as not to prejudice the rights of the surety in the amount of the contract price, which was the only security existent for the protection of the defendant, Insurance Company. Plaintiff, Meyer, cannot hold the defendant surety liable beyond the precise terms of the bond, strictly construed. *Skillman* v. *U. S. Fidelity & Guaranty Co., supra.*

The rights of the Decker Company against the plaintiff, Meyer, which by virtue of this action are of concern to the defendant Insurance Company were governed by the Mechanics' Lien act (3 *Comp. Stat., p.* 3290 and amendments), the pertinent sections being 2, 3, 5 and 6. Construction and interpretation of these sections have evolved the following rules of law applicable here.

When a building contract, with the specifications, is duly filed with the clerk of the county in which the building or land is situate, the owner is then liable to the contractor alone for the work done and materials furnished. 3 *Comp. Stat., p.* 3293, § 2.

When the contract and specifications are so filed, laborers and materialmen have inchoate liens against the owner for the amounts due them for the labor performed and materials furnished. 3 *Comp. Stat., p.* 3298, § 5. These inchoate liens can be perfected only by taking the necessary steps provided by section 3 of said act. *Cum. Supp. Comp. Stat.,* (1925-

1930), 126-3, *p.* 951, § 3, *&c.; Bayonne Building Association* v. *Williams,* 59 *N. J. Eq.* 617. When such a lien is so perfected, it gives the stop-notice claimant preference over holders of assignments or orders from the contractor, whether or not the same were submitted to the owner before or after the filing of the stop-notice. *Cum. Supp. Comp. Stat.,* 1925-1930, 126-6, *p.* 954; *Leary* v. *Lamont,* 42 *Atl. Rep.* 97 *(N. J. Eq.)* ; *Pinsky, &c.,* v. *Wike,* 101 *N. J. Eq.* 45; *affirmed,* 103 *Id.* 18). Such stop-notice operates on sums due from the owner to the contractor, sums to grow due, and sums still unpaid after maturity of the payment date. *Bowden* v. *Baier,* 99 *N. J. L.* 361; *Decker, &c., Co.* v. *Meyer, supra.*

After a stop-notice has been filed, the owner is required to withhold payments to the contractor until the stop-notice claimant is satisfied up to the amount due or to grow due on the contract. Section 3, *supra.* Such duty cannot be avoided either by making payment to the contractor (Section 5, *supra*), by acceptance of an order or assignment of the contractor (*Pinsky, &c.,* v. *Wike, supra*), or by making payments in advance of the requirements of the contract. *Loizeaux Lumber Co.* v. *Steinberg,* 102 *N. J. L.* 15; *Smith* v. *Dodge and Bliss Co.,* 59 *N. J. Eq.* 584. Where payments are to be made only upon production of an architect's certificate, the production of such certificate before payment cannot be waived as against a stop-notice claimant. *Daley* v. *Somers Lumber Co.,* 70 *Id.* 343, *affirmed,* 71 *Id.* 307; *Hasson* v. *Bruzel,* 104 *Id.* 95.

As to the instant case, upon the filing of the building contract, the plaintiff, Meyer, became liable solely to the Philco Company. Although at the time of the filing of the stop-notice by the Decker Company, Meyer had received certain orders and assignments given by Philco Company, he became at that time obligated to hold the remaining funds for the primary satisfaction of the stop-notice claim. In disregard of this legal duty, Meyer consumed the entire sum by payment of the assignments and orders.

Meyer's argument that he, having accepted the orders and

assignments, was thereby obligated to pay them, is tenuous, since such an acceptance would have been powerless to defeat the requirements of the statute.

Furthermore, we find nothing in the record to the effect that these orders were accepted by Meyer, except in the sense that they were subsequently paid. The stipulation of facts says that the orders "had been served upon and received by the plaintiff."

Meyer was further at fault, as to the Decker Company, by making payment of the final installment of $15,000 before production of the architect's certificate. This was especially true as to the sum of $7,290 which was still in his hands at the time the stop-notice was filed. Any argument that refusal to pay the assignments and orders might have precipitated a breach of contract on the part of the Philco Company is of no avail. The disregard of a present legal obligation cannot be excused by the possibility of a future contingency against which there exists adequate protection, here in the form of a surety company's bond.

As stated above, the only security available for the protection of the defendant as surety was the contract price of $55,000. Upon the filing of the contract, Meyer secured a legal position which he was bound not to violate to the prejudice of the Insurance Company. In disregard of his contractual duties to the surety, Meyer voluntarily relinquished the rights secured under section 2 of the Mechanics' Lien act, violated his legal obligation in refusing to honor the stop-notice claim, and dissipated the sole security in his hands by advancing payment, before production of the architect's certificate, in violation of the terms of the contract and bond.

"The manner of making payments provided by a contractor's bond is not, as against a surety, waived by the provision that the surety agrees to pay claims of materialmen, so as to entitle the owner to pay such claims in a manner not provided by the contract without releasing the surety." *First National Bank of Montgomery* v. *Fidelity and Deposit Co. of Maryland*, 5 *L. R. A. (N. S.)* 418; 40 *So. Rep.* 415 (*Ala. Supreme Court*).

"It is a general principle that any material alteration in a building contract will release non-consenting sureties upon a bond given to guarantee the faithful performance of the contract, and to protect the owner against any claims or liens for labor or materials used in the construction of the building. Whether a payment made by the owner before it has become due, or in an amount larger than provided for in the contract, is such a material alteration of the contract as to release the sureties, is a question upon which the decisions do not agree; but the great weight of authority seems to be that such payments will release the sureties, the argument being not only that the sureties are entitled to have the amounts reserved in the contract applied to the satisfaction of possible liens or claims against the building, but also that the fact that there are earned, but unpaid, moneys in the hands of the owner, will act as incentive to the contractor to execute his contract in a faithful manner." *Case note 5 L. R. A. (N. S.)* 418. See, also, *Welch* v. *Hubschmilt Building and Woodworking Co.,* 61 *N. J. L.* 57.

The reservation of a portion of the contract price until the completion of the building is not only for the benefit of the owner but also for the benefit of the surety. *Prairie States National Bank* v. *United States,* 164 *U. S.* 227; 41 *L. Ed.* 412.

Whether this bond be construed one of indemnity or of strict guaranty, the promise of the defendant Insurance Company could not arise above payment of just and lawful claims of any subcontractor, laborer or materialman. By his acts, Meyer has made it impossible for the defendant to ever determine the validity of the orders and assignments as paid. The Decker Company claim was established beyond dispute. Meyer, however, assumed the right to pass judgment on the other claims, despite the fact that an irregularity existed in that the total of all claims exceeded the contract price.

By payment of the sum of $7,290 upon the orders and assignments, disregarding the claim of the Decker Company, Meyer disregarded a legal duty and misapplied a fund which the Insurance Company had a right to have applied to payment of the claim now sought to be charged against it.

Meyer argues that had he paid the Decker Company's claim, the Insurance Company would have been no better off because the subcontractors whom he paid could have collected their claims from the Insurance Company. Whether the defendant Insurance Company would have been liable for the amount of the satisfied orders and assignments, as relied on by the trial court, is not an issue in this action. That could have been determined in a suit between the subcontractors and the Insurance Company—and had the issue been raised, the Insurance Company would at least have had an opportunity to question the validity and amount of the subcontractors' claims.

The views above expressed lead necessarily to a reversal of the judgment under review, and as the case was tried upon an agreed state of facts before the judge, a jury being waived, and he having misdirected himself in point of law and entered a wrong judgment, this court, in reversing, there being no disputed facts, will not order a *venire de novo,* but will order such judgment to be entered in the court below as appears by the record ought to have been entered. The record will therefore be remitted, with direction to the Supreme Court to enter judgment for the defendant-appellant. *Skillman* v. *United States Fidelity and Guaranty Co., supra; Dubelbeiss* v. *Town of West Hoboken,* 82 *N. J. L.* 683.

*For affirmance*—The Chief Justice, Heher, Van Buskirk, JJ. 3.

*For reversal*—The Chancellor, Lloyd, Case, Bodine, Donges, Perskie, Kays, Hetfield, Wells, JJ. 9.