D & K LANDSCAPING CO., PLAINTIFF-APPELLANT v. GREAT
AMERICAN INSURANCE CO., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 13, 1983—Decided September 27, 1983.

Before Judges MICHELS, KING and DRIER.

*Charles H. Nugent,* argued the cause for appellant; (*Clifford V. Long,* on the brief).

*Edward J. Frisch,* argued the cause for respondent (*Lindabury, McCormick & Estabrook,* attorneys; *Bruce P. Ogden,* on the brief).

DREIER, J.A.D.

Plaintiff appeals from a decision of the Law Division denying its motions for summary judgment and granting those of defendant. The facts are largely undisputed. Plaintiff acted as a landscaping sub-contractor employed by South Jersey Construction Company (South Jersey) on a highway project in which South Jersey was retained by the State of New Jersey and for which defendant Great American Insurance Company (Great American) had posted a payment and performance surety bond. The contract with the state had been entered into in October 1969 and plaintiff was one of several sub-contractors who had made claims on the bond between 1973 and 1980. Plaintiff's final estimate of its claim had been presented to defendant on January 13, 1973, and during that month he also filed a claim with the Department of Transportation for the balance due. On January 26, 1973 defendant acknowledged receipt of plaintiff's claim by a letter that contained a reservation of rights and defenses. In April 1973 plaintiff advised the Department of Transportation that plaintiff had completed all work on the project. Three years later, on April 6, 1976, the Department of

Transportation notified plaintiff that final settlement and disbursement of funds on the projects was pending and requested status of plaintiff's claim, whereupon plaintiff advised the Department of the outstanding balance due.

On June 22, 1977 Superior Court entered a final judgment ordering the Department of Transportation to accept the project. Acceptance was given on November 17, 1977, with notification to plaintiff and others of this acceptance on January 4, 1978. On June 21, 1978 plaintiff wrote to Great American and reminded it that the claim was still unpaid and also requested that the surety "let us know the status of our payment due at your earliest convenience." Defendant responded, reciting the history of its efforts to have the project accepted, and then stated "the State of New Jersey is still holding sufficient monies to satisfy your claim, which they have refused to release to us, therefore, we suggest you present your claim to the State for payment."

On August 1, 1978 plaintiff wrote to the deputy attorney general in charge of the project, enclosing a copy of defendant's response, and requested payment. A week later the State responded that "Great American Insurance Company, which suggested referring this matter to our attention, is the party liable for that amount, if proved, as provided in the [construction] contract." The State noted specifically that "your protection may be under the Bond Act *N.J.S.A.* 2A:44–143 *et seq.* and the Trust Act, *N.J.S.A.* 2A:44–147 [sic]." By letter of even date the State notified Great American that it was obligated to "pay outstanding claims submitted to it pertaining to the above reference construction job", and that upon defendant's submitting the appropriate documents to the State showing that the claims had been satisfied and that the Bankruptcy Court had no interest in the money retained by the State, "the State will rpovide [sic] for the release of monies presently retained to the extent of the surety's payment of claims." The funds were later released to defendant on January 28, 1981.

Plaintiff, on September 28, 1981, alleged in its complaint that Great American was obligated to it on the surety bond, or under the Trust Fund Act. The trial court granted defendant's motion for summary judgment on the surety bond, based upon the statute of limitations governing such actions, and further held that the Trust Fund Act was inapplicable. We agree with the court's determination as to the statute of limitations, but are constrained to reserve and remand as to the trust fund issues raised herein.

I

Under *N.J.S.A.* 2A:44–146 an action on a surety bond must be brought within one year of the date of acceptance of the project. Plaintiff failed to do so here and thus is time barred. This was acknowledged by plaintiff in the court below, and this point has not actively been pursued in this court. Suffice it to say defendant is not equitably estopped by its negotiations with plaintiff from raising the bar of this statute. This is not a situation in which a defendant intentionally misled a plaintiff to believe that the claim is being evaluated in good faith. *See Tantum v. Binz,* 186 *N.J.Super.* 296, 304 (App.Div. 1981), rev'd on dissent 91 *N.J.* 426 (1982); *Highway Trailer Co. v. Donna Motor Lines Inc.,* 46 *N.J.* 442, 449, *cert.* den. 385 *U.S.* 834, 87 *S.Ct.* 77, 17 *L.Ed.2d* 68 (1966). Plaintiff here was apprised of the bona fide position of defendant and was caught between conflicting interpretations of the surety's and State's duties. It could have brought suit on the bond within the statutory period, but did not; it therefore was properly barred.

II

Since the contractor was bankrupt, the trustee envisioned by the Trust Fund Act, *N.J.S.A.* 2A:44–148, could not be forced to make payment. Insofar as the State was holding the funds for the benefit of the contractor, the State might have been found subject to the Act but for the Supreme Court's decision in

*National Surety Corp. v. Barth,* 11 *N.J.* 506, 511 (1953); although this latter decision might be questioned under the dicta in *Graybar Elec. Co. v. Manufacturers Casulty Co.,* 37 *N.J.Super.* 284 (Law Div.1955), aff'd o.b. 21 *N.J.* 517 (1956), *Hiller & Skoglund Inc. v. Atlantic Creosoting Co. Inc.,* 40 *N.J.* 6, 21 (1963).

Whether the Act is applicable or not, there is a parallel common law trust fund theory upon which plaintiff's claim may be based, and which was argued to the court below. *National Surety Corp. v. Barth, supra,* 11 *N.J.* at 515. This claim was not originally alleged in the complaint. However, at the stage to which this matter had progressed below, an amendment to allege the common-law as well as statutory trust theory should have been granted. In fact, had evidence been presented on this issue, we would have deemed the complaint amended to conform to such evidence under *R.*4:9–2.

The issue, therefore, is whether Great American, when it received payment from the State of New Jersey, could properly have disregarded plaintiff's claim, which had been presented and reiterated several times over the preceding years. Defendant counters with the argument that since it had paid four creditors and its attorney nearly $57,000 before it received the net payment from the State of $47,617.79, it was subbrogated to the rights of these various creditors and had no obligation to pay plaintiff.

The trial court, having determined that no trust fund theory was applicable, did not reach this issue. Since *N.J.S.A.* 2A:44–148 provides only that the trust fund in the hands of a contractor must be held for the payment of "all claims for labor, materials and other charges incurred in connection with the performance of such contract": (a) should a parallel construction be placed on the common-law trust fund obligations, (b) may a surety standing in the place of the contractor prefer one claimant over another, or (c) must the surety apply the equitable maxim of "equality is equity" and make rateable payments

among all known claimants of equal classification? These questions should be resolved on remand. *See, e.g., Smith v. Whitman,* 39 *N.J.* 397, 402 (1963); *Monmouth Lumber Co. v. Indemnity Ins. Co. of No. America,* 21 *N.J.* 439, 451 (1956). Although the surety paid other claims from February 1973 through April 1980 and now asserts that such payments preclude its responsibility to plaintiff, it should be noted that these various payments were made at the very time defendant was writing to plaintiff to say that there was no obligation upon the surety to make such advances. Although this appears somewhat disingenuous to us, the circumstances should be explored on remand.

As noted earlier, defendant has claimed that payments made to its attorneys properly depleted the fund in question. These payments were made from 1973 through 1980, initially to achieve acceptance of the project but later to protect defendant from other claimants such as plaintiff. Although the former payments may properly be recognized as claims against the fund the latter may not, being merely normal business expenses of defendant. *Montefusco Excavating & Contracting Co. v. Middlesex Cty.,* 82 *N.J.* 519, 527 (1980). On remand, the trial court should inquire into the status of each of such payments.

If defendant, as trustee, breached its obligations to plaintiff as a known creditor of the prime contractor, it may be held liable as a defaulting trustee. *Restatement of Trusts* 2d § 205(a) (1959). *See also* 3 Scott, *The Law of Trusts,* (3d ed. 1967) § 245 at 2155; *Branch v. White,* 99 *N.J.Super.* 295, 313 (1968). On remand, the judge should determine the amount plaintiff would have been paid from the funds in the hands of defendant had plaintiff's claim been honored together with those of the five other creditors and the legitimate portion of plaintiff's attorney's claim. If there would have been an insufficient amount by way of the State's payment to Great American to defray all of such claims, plaintiff shall receive the same portion of its claim as the amount received from the State bears to the total allowable claims.

The decision of the Law Division is affirmed as to Counts I and II of the complaint, and is reversed as to Count III of the complaint (as the same is deemed to have been here amended) and remanded for further determination. We do not retain jurisdiction.