FRANCIS PH. FRIEDMAN, PLAINTIFF-APPELLANT, v. ISA-
DORE STEIN, DEFENDANT-RESPONDENT AND CROSS-
APPELLANT, ET AL.

Argued January 9, 1950—Decided February 14, 1950.

36

Mr. *Jerome Alper* argued the cause for appellant (*Messrs. Jerome Alper & Alper,* attorneys).

Mr. *Samuel Kaufman* argued the cause for defendant-respondents and cross-appellant (*Messrs. Bilder, Bilder & Kaufman,* attorneys).

The opinion of the court was delivered by

HEHER, J.   Plaintiff appeals from a judgment entered June 20, 1949, discharging a mechanic's lien claim for architectural services filed by him September 26, 1947, under *R. S.* 2:60–129 *et seq.,* and striking out the complaint in this action to enforce the claim as to the defendants Jack Stein and Fulton Packing Company; and the defendant Isadore Stein cross appeals from so much of the judgment as denied his motion to strike out the complaint as to him. This court, acting *ex mero motu,* certified the cause for appeal to the Appellate Division of the Superior Court.

This is the case made by the plaintiff: On June 15, 1945, plaintiff, a licensed architect, of the one part, and the defendants Isadore Stein and Jack Stein and one Kenny and one Levine, of the second part, entered into an oral agreement whereby plaintiff undertook to prepare plans and specifications for the erection of an abattoir on lands situate on Legal Street, in Newark, and to supervise the construction work, and the

parties of the second part agreed to pay for such services at the "basic rate" of 5% of "the total cost of labor and materials required" for the building of the structure and "traveling and survey costs and expenses." There was provision also, it is alleged, for the extension of the service and the obligation of compensation to corporations in process of formation and in contemplation, and for the execution of a written contract embodying the stipulations thus made should the parties deem that course necessary or advisable for "business or other reasons;" but it was agreed that the execution of the writing would not be deemed "a novation of the contract already made" or a substitute therefor, and that the individual liability of the parties for the payment of the architect's compensation would continue in addition to the liability of the "newly created corporations" and "such corporations created by them who shall take over either the business or title of the realty of the parties." On August 5, 1945, in accordance with the demand of the defendants, or some of them, a written contract was executed by all the parties except Isadore Stein, who affixed his signature to the instrument a year later. It is said that the individual parties defendant represented to plaintiff that a corporation to be known as the Legal Holding Company was then in process of formation to take title to the lands on Legal Street about to be purchased for the site of the proposed abattoir, and that another body corporate to be known as the Legal Packing Company would be formed to operate the enterprise. The contention is that this written agreement was purely substitutionary in conformity with the oral contract, and in no sense a modification of its terms. On the ensuing August 17th, the parties of the second part organized the Legal Holding Company and Legal Packing Company as bodies corporate; and the capital stock of these corporations was issued to them or their nominees. On August 29th following, the land on Legal Street made the subject of the lien claim was conveyed to the Legal Holding Company; and shortly thereafter the construction work was commenced. In March, 1946, Kenny and Levine transferred their interests in the corpora-

tions to the Steins and withdrew from the venture. The Steins, it is alleged, assumed their liability to plaintiff under the contract. It was a co-operative enterprise. The estimated cost of the project at the outset was $250,000; and this was financed by subscriptions of $5,000 each by a group of 50 butchers whose interests would be served by the new source of supply. But unexpected difficulties were encountered by the shortened supply of labor and materials during the post-war period; and on April 22, 1946, the Steins organized the Fulton Packing Company as a body corporate to provide a temporary abattoir pending the completion of the project. On September 6th of that year, contiguous land was purchased and the title conveyed to Fulton; and the construction work on that site was placed under the supervision of plaintiff. Later on it was decided to enlarge the plant to include the lands of Fulton. But there were insurmountable problems. Some of the associate butchers, complaining of the delay and other irritations, demanded a return of their investment; and creditors became insistent. The result was an abandonment of the construction work June 4, 1947, and the appointment July 11, 1947, of a receiver in equity at the instance of an unpaid materialman. Eventually, the assets were returned to Legal Holding and the receiver discharged under a plan whereby the administration expenses were paid and the creditors provided for. Construction work was resumed; and the building is now in the possession of Waverly Meats, Inc., who was not named in the lien claim and is not a party to this action.

On March 19, 1947, a notice of intention to "perform labor and furnish materials" was filed under R. S. 2:60–112, obviously because of the builder's straitened circumstances; and on September 26, 1947, a lien claim of $29,660.05 was filed. It comprised fees of 5% of an assumed construction cost of $650,000, and 2% of that amount "for revising and redraughting complete set of plans involving all changes and revisions ordered to date during progress of the work," or a total of $45,500, and survey, traveling and other expenses in the sum of $500, or a grand total of $46,000, less credits

of $16,339.95, or a net balance of $29,660.05. It is stated in the claim that all these services "were performed between June 15, 1945, and July 11, 1947.".

The ground taken by the defendant respondents is, in brief, (1) that the notice of intention is ineffective for failure to name the person for whom the labor was to be performed and the materials furnished in accordance with *R. S.* 2:60–113; and (2) that the lien claim itself is also ineffectual under *R. S.* 2:60–130(d) for want of sufficient particularity and for wilful or fraudulent misstatements therein. This latter section of the statute provides that failure to file a lien claim "in the manner or within the time" provided by the article or "a willful or fraudulent misstatement" in the bill of particulars of matters directed to be incorporated in the claim "shall free the lands and building from all liens for the matters mentioned in the claim."

The mechanic's and the materialman's liens had their genesis in the civil law. They are unknown to the common law; and they have had no recognition in equity except as prescribed by statute. *South Fork Canal Co. v. Gordon,* 6 *Wall.* 561, 18 *L. Ed.* 894 (1868) ; *Van Stone v. Stillwell & Bierce Mfg. Co.,* 142 *U. S.* 128, 12 *S. Ct.* 181, 35 *L. Ed.* 961 (1891) ; *Brescia Construction Co. v. Walart Construction Co.,* 264 *N. Y.* 260, 190 *N. E.* 484 (1934) ; 93 *A. L. R.* 1148. Thus it is that these liens are exclusively statutory in origin; and, being in derogation of the common law, the provisions of the statute giving rise to the lien are to be strictly construed, while the provisions for the enforcement of the lien thereby created are to be liberally construed to effectuate the remedial statutory policy of providing priority of payment of the price or value of work performed and materials furnished in the erection or reparation of a building or other structure and this wise the security of the land and buildings for the payment of that which has made for an assumed enhancement of the value of the property. *Ayres v. Revere,* 25 *N. J. L.* 474, 481 (*Sup. Ct.* 1856) ; *Dalrymple v. Ramsey,* 45 *N. J. Eq.* 494 (*Ch.* 1889) ; *American Brick & Tile Co. v. Drinkhouse,* 59 *N. J. L.* 462 (*E. & A.* 1896) ; *Shoemaker*

*v. Maloney,* 102 *N. J. L.* 363 (*E. & A.* 1926); *Weinberger v. Goldstein,* 106 *N. J. Eq.* 489 (*Ch.* 1930); *Passaic-Bergen Lumber Co. v. Currie,* 111 *N. J. L.* 63 (*Sup. Ct.* 1933); *Fidelity & Deposit Co. of Maryland v. McClintic-Marshall Corporation,* 115 *N. J. Eq.* 470 (*Ch.* 1934); affirmed, 117 *N. J. Eq.* 440 (*E. & A.* 1935); *Belmont Coal & Lumber Co. v. James F. Wood Builders, Inc.,* 125 *N. J. L.* 315 (*Sup. Ct.* 1940).

█ █ The claim for labor and materials is a property right which does not ripen into an enforceable lien on the land and building until there has been substantial compliance with all the statutory conditions prerequisite. This is a familiar rule of construction. It is fundamental that the lien does not materialize until all the statutory requisites are met. This by legislative ordinance. *Bartley v. Smith,* 43 *N. J. L.* 321 (*Sup. Ct.* 1881); *Bayonne Building Ass'n v. Williams,* 59 *N. J. Eq.* 617 (*E. & A.* 1899); *McNab & Harlin Mfg. Co. v. Paterson Building Co.,* 72 *N. J. Eq.* 929 (*E. & A.* 1907); *J. C. Vreeland Building Co. v. Knickerbocker Sugar Refining Co.,* 75 *N. J. L.* 551 (*E. & A.* 1907); *Austin v. Leer,* 101 *N. J. L.* 53 (*Sup. Ct.* 1925); *West Jersey Homeopathic Hospital v. Gibbs,* 103 *N. J. Eq.* 262 (*Ch.* 1928); *White & Shauger, Inc., v. Strait,* 10 *N. J. Misc.* 133 (1932); *Passaic-Bergen Lumber Co. v. Currie, supra.* The statutory lien is separate and distinct from the underlying debt; the lien affords a cumulative remedy for the enforcement of the debt. *Shoemaker v. Maloney, supra.* The claimant's status is that of a general creditor until those things are done which give him the security of the statutory lien. Until then, the lien is inchoate merely.

█ The lien covers "labor performed or materials furnished" for the erection, construction, completion, alteration or repair of a building as defined in the article, or an addition thereto. *R. S.* 2:60–107. Architectural services and supervision are within the protection of the statute. *Mutual Benefit Life Insurance Co. v. Rowand,* 26 *N. J. Eq.* 389 (*Ch.* 1875); *Turck v. Allard,* 87 *N. J. L.* 721 (*E. & A.* 1915). Unless a written contract for the construction work be filed

as provided by *R. S.* 2:60–115, no one shall be entitled to a lien for labor performed or materials furnished "prior to the filing * * * of a mechanic's notice of intention to perform such labor or furnish such materials," with an exception not here pertinent. *R. S.* 2:60–112. The filing of the contract under *R. S.* 2:60–115 is deemed to be in lieu of the mechanic's notice of intention; and in that event the land and building shall be liable to the lien of the contractor alone for labor performed or materials furnished pursuant to the contract. *Vide American Homes Co. v. Krantz,* 131 *N. J. Eq.* 213 (*Ch.* 1942). And the statute directs that the notice of intention shall contain, *inter alia,* the "name of the one for whom the labor is to be performed or to whom the materials are to be furnished." *R. S.* 2:60–113. The notice is deficient in this respect; and the contention is that the omission is one of substance which rendered abortive the proceeding to establish a lien under the statute. We concur in that view.

The lien does not come into being unless the notice of intention satisfies the substance of the statutory requirements. The bare notice is not enough. Its character and content are fixed by the Legislature; and a notice in compliance with the legislative command is a condition precedent to the creation of the lien. This is a self-evident proposition that needs no demonstration. And it does not matter that the contract for the architectural services was made with the landowner or those purporting to act for him. *Passaic-Bergen Lumber Co. v. Currie, supra.*

It is suggested that the notice of intention is amendable to cure the deficiency. The amendatory power derives from the statute alone, and is subject to the limitations thereby imposed. *American Brick & Tile Co. v. Drinkhouse, supra; Rizzolo v. Poysher,* 89 *N. J. L.* 618 (*E. & A.* 1916). In 1940, the Legislature empowered the justices of the old Supreme Court and the judge of the circuit court before whom the action on a lien claim of this class was pending, at any time before judgment, to amend the notice of intention in matter of substance as well as of form, on the appli-

cation of the lien claimant, and on reasonable notice to all parties in interest, saving the rights of *bona fide* purchasers or mortgagees. It was further provided that, in the event of affirmative relief, the amendment should be reduced to writing, signed by the judge, and filed in the office of the County Clerk. *P. L., p.* 302. In 1948, by an amendment of this provision, the power was extended, in the same terms, to the judges of the Superior Court and the County Court. *P. L.* 1560.

The record does not show that this power was invoked; indeed, it is quite clear that it was not. The notice of intention filed with the County Clerk stands unamended. A lien claim once filed is unamendable except in the manner provided by the statute, after a hearing on notice to all the parties in interest. *Board v. Freedman,* 99 *N. J. Eq.* 351 (*E. & A.* 1926).

And the lien claim itself is fatally defective. The proofs are conclusive of a wilful misstatement of the amount due the lien claimant. It is evident that the claim filed is inclusive of compensation for professional services rendered prior to the filing of the notice of intention, nonlienable under *R. S.* 2:60-112. The claimant's work began June 15, 1945. There was no thought of a lien under the statute until adversity overtook the enterprise. The notice of intention was then filed, March 19, 1947; but the claimant's work in major part had been done. He conceded on the witness stand that "the great bulk of the work was completed" when the notice of intention was filed. All the plans, sketches and tracings for the original project had long since been completed. And it is also reasonably clear from the proofs that the revision of the plans to cover the enlargement of the plant had then been accomplished in great part, if not entirely. For this a charge of $13,000 was made. The payments made to the claimant before and after the filing of the notice of intention were far short of full compensation for services rendered before the filing of the notice. Also, on July 10, 1947, when the receiver was appointed, the building was without roof or windows, and there was very little inside

construction. The contractor had then been paid $345,590.14. Yet the claimant included in his demand 5% of an assumed construction cost complete of $650,000, and 2% of that amount for the revision of the plans. The contract provided for compensation at the rate of 5% of the total cost of labor and materials required for completion; but there was also a provision for a proportionate payment should the execution of the work be "abandoned or suspended." As we have seen, $650,000 was not the contract price, but the estimated cost of completion. The original estimate was $250,000. There are other respects in which the claim for fees is subject to challenge; such, for instance, as the inclusion in the estimated cost of completion, $650,000, as the base for the computation of claimant's compensation, of the contractor's profit of 15% of the cost of labor and materials. But we find it unnecessary to do more than hold that the undoubted inclusion in the claim for compensation of service rendered prior to the filing of the notice of intention and the calculation of the fee upon the estimated cost of completion, in disregard of the contractual formula for a prorated compensation, constituted wilful misstatements which served to free the lands and building "from all liens for the matters mentioned in the claim" in accordance with *R. S.* 2:60-130. The wilful and intentional inclusion in the lien claim for compensation of sums plainly not the subject of the statutory lien, for the deliberate purpose of unduly enlarging the lienable claim, operates as a forfeiture of the lien in its entirety. Conscious exaggeration to escape the limitations of the statute as to the quantum of the lien is fatal. This is plainly not a case of pure inadvertence or "honest mistake," as in *Buchanan & Smock Lumber Co. v. Einstein,* 87 *N. J. L.* 307 (*E. & A.* 1915).

Mechanics' lien claims are also amendable before final judgment in matter of substance as well as of form, but not to escape the consequences of a wilful or fraudulent misstatement. *R. S.* 2:60-132; *P. L.* 1948, *c.* 370, *p.* 1509; *American Brick & Tile Co. v. Drinkhouse, supra.* Moreover, there was no motion here for a specific amendment of the

claim before final judgment. The claim stands unamended and so is ineffectual. *J. C. Vreeland Building Co. v. Knickerbocker Sugar Refining Co., supra.*

We have no occasion to consider whether the bill of particulars is deficient in its statement of the "time when the labor was performed and the materials furnished." The statute dispenses with the need of such particularization "when the labor or materials or both are performed or furnished by contract." *R. S.* 2:60–130. Here, the parties stipulated for a fixed rate of compensation based on the total cost of labor and materials required for the construction of the building—labor and materials furnished by the general contractor to the owner, not by the architect to the owner. For a discussion of the cost-plus contract in relation to such provisions, see *Fyfe v. Sound Development Co.,* 235 *N. Y.* 266, 139 *N. E.* 263 (1923), 26 *A. L. R.* 1325.

Thus, the complaint is not maintainable for the enforcement of the asserted lien by a special judgment *in rem* against the lands. The claimant can have recourse only to the remedies of a general creditor against those who have assumed a contractual liability in the premises. His right of action is *in personam* against such of the parties as may be liable to a general judgment.

Fulton was not a party to the original contract; but, as stated, part of the structure was erected on its lands. It is not in evidence that Jack Stein was a party to the contract. And it is said that Isadore Stein's signature to the contract was "wholly gratuitous and imposed no legal obligation," for want of consideration. We think there is a sufficient showing to sustain the complaint as to him against the motion to strike. The claimant maintains that he was a party to the original oral contract evidenced by the writing. The question is one for determination after the issue has been litigated in the customary mode. Moreover, we take the view that the claimant should be at liberty to prosecute an action *in personam* against any or all of the parties, as he may be advised, and the judgment is modified so as not to preclude that course. The second count of the complaint is in the nature

of a *quantum meruit*.  A motion to amend in the Superior Court was denied.  Wilful misstatement works a forfeiture of the lien, but not a loss of the right of action *in personam*.

The judgment is modified accordingly, and, as so modified, affirmed; and the cause is remanded for further proceedings not inconsistent with this opinion.

*For modification*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*Opposed*—None.