SHORE BLOCK CORP., Appellant,

v.

LAKEVIEW APARTMENTS, a partnership composed of William H. Perlman and Beryl N. Perlman, partners, the Donrich Corporation, a corporation of the State of New York authorized to do business in the State of New Jersey, Douglas T. Construction Company, Inc., a corporation of New Jersey, United States of America, and Louis M. Drazin, Receiver of Douglas T. Construction Company, Inc. and United States of America, Intervenor.

No. 16155.

United States Court of Appeals
Third Circuit.

Argued Feb. 14, 1967.

Decided May 18, 1967.

Louis P. Introcaso, Asbury Park, N. J. (Novogrod & Sugarman, Asbury Park, N. J., Attorneys for Plaintiff-Appellant, on the brief), for appellant.

Alan J. Pogarsky, Toms River, N. J. (Robert Friedlander, Asbury Park, N. J., on the brief), for appellees, Louis M. Drazin and others.

Arthur L. Abrams, Newark, N. J., for appellee, Lakeview Apts. and The Donrich Corp.

Stuart A. Smith, Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Mark S. Rothman, Attys., Dept. of Justice, Washington, D. C., Of Counsel: David M. Satz, Jr., U. S. Atty., on the brief), for intervenor, United States.

Before SMITH and SEITZ, Circuit Judges, and JOSEPH S. LORD, III, District Judge.

## OPINION OF THE COURT

JOSEPH S. LORD, III, District Judge.

This action arises out of plaintiff Shore Block's attempt to enforce a "stop notice" [1] against the defendant Lakeview Apartments ("Lakeview") for amounts owing to plaintiff on account of materials furnished to Douglas T. Construction Co. ("Douglas T."), a subcontractor working on the construction of an apartment building for the owner, Lakeview. The general contractor on the job was Donrich Corporation ("Donrich"), whose principals are the same as Lakeview's although it is a separate corporation. Plaintiff appeals from a judgment

---

1. Under the New Jersey Mechanics' Lien statute. N.J.Stat.Ann. 2A:44–77.

against it by the trial judge sitting without a jury.

The essentials of the New Jersey mechanics' lien scheme are:

(1) Before a contractor, subcontractor, or materialman can assert a lien against the property, he must file a "notice of intention" before work under the contract has begun. N.J.Stat.Ann. 2A:-44–71.

(2) However, if the prime contract between the owner and the general contractor is filed with the proper county clerk, thereafter the subcontractors and materialmen are precluded from filing the notice of intention, and hence from asserting a lien against the property. N.J.Stat.Ann. 2A:44–75.

(3) When the prime contract has been filed, the lien protection is supplanted by the subcontractors' and materialmen's rights to file a "stop notice." N.J.Stat. Ann. 2A:44–77; Meyer v. Standard Accident Ins. Co., 114 N.J.L. 483, 177 A. 255 (E. & A. 1935).

(4) The stop notice, which is filed against the owner of the premises, but not against the property, results in a garnishment of funds in the hands of the owner which are owing to the prime contractor. Where it is filed by a materialman or sub-subcontractor, it is effective even though the prime contractor has satisfied his own obligation to his own subcontractor, N.J.Stat.Ann. 2A:44–78; Arrow Buildings Supply Corp. v. Hudson Terrace Apts., 15 N.J. 418, 105 A.2d 387 (1954).

(5) The remedy by stop notice is available only when the right to file a notice of intention, and thus to obtain a mechanics' lien, is foreclosed by the filing of the prime contract. English v. Warren, 65 N.J.Eq. 30, 54 A. 860 (Ch. 1903).

Against this background, we consider the facts:

The prime contract between Lakeview, the owner, and Donrich, the general contractor, was entered into on June 10, 1964, and was filed in the Office of the Monmouth County Clerk on June 11, 1964. On July 8, 1964, Donrich entered into a subcontract with Douglas T., subcontractor, for masonry and materials. This latter contract between Donrich and Douglas T. contained the following provision:

"8. The Subcontractor hereby covenants and agrees:

"(a) To save the Owner and the Contractors harmless from any and all claims, demands, suits, of whatsoever kind or nature, arising out of the performance of this Subcontract, and from liens or claims for liens against the aforesaid premises or any part thereof, or any buildings thereon, of any subcontractor, or any persons acting through or under the Subcontractor, and agrees that if at any time there shall be any evidence of the filing or maintenance of any such claims, demands, suits, liens or claim for lien, the Contractor shall have the right to deduct from the amount otherwise due to the Subcontractor hereunder, an amount sufficient to indemnify it for any or all loss or damages which may result therefrom.

"(b) To waive his right to file a lien of any kind, nature or description, including Mechanics Notice of Intention, a notice of intention, a stop notice, and without limiting the foregoing, any other claim against the premises which the Subcontractor might or can have, including the Subcontractors suppliers."

From July 23, 1964, through December 15, 1964, Douglas T. purchased from plaintiff Shore Block, materialman, certain materials used for the construction of the apartments. After October 13, 1964, Douglas T. made no payments to plaintiff and on January 29, 1965, plaintiff filed a stop notice in the Monmouth County Clerk's Office against Lakeview, Donrich and Douglas T., which was served on the parties.

When Donrich disputed the amount claimed, plaintiff filed a complaint in New Jersey Superior Court on February 15, 1965, on its stop notice against Lakeview, Donrich and Douglas T. for $29,-

338.33, plus costs of $82.40. Donrich, acknowledging that it owed Douglas T. $25,657.00, filed a counterclaim for interpleader. Donrich joined as defendants to that counterclaim Shore Block, Louis M. Drazin, who, in another state court action still pending, had been appointed statutory receiver of Douglas T. on April 9, 1965, and the United States of America, which had levied on Donrich for a $12,257.92 tax lien duly acquired by appropriate filing against Douglas T. on March 2, 1965. On July 15, 1965, the United States removed the case to the District Court pursuant to 28 U.S.C. § 1444. Thereafter, the court dismissed the interpleader as to the United States and allowed it to intervene as a party plaintiff asserting its tax lien.

The District Judge found against the plaintiff on the ground that plaintiff's continued delivery of materials after it had actual knowledge of the waiver of lien clause in the Donrich-Douglas T. contract barred it from recovery.

## I.

Quite clearly, the contract between Donrich and Douglas T. in itself and solely by its own terms, could not bind plaintiff to a surrender of its statutory rights. Plaintiff was not a signatory, nor in any other way a party to the contract, and, as to plaintiff, it was totally lacking in consideration. Hence, any bar to plaintiff's assertion of its stop notice rights must depend upon grounds other than purely contractual ones, for there simply was no such contract involving plaintiff. The District Judge could not and did not find that there was.

Passing then, as we must, any conceptual notion of contract principles, plaintiff's embedded statutory right could be vitiated only by the application of a finding of waiver of that right. We do not understand that the District Judge found as a fact (as opposed to a conclusion of law) any intentional, voluntary, clear and decisive relinquishment of a known right. Cf. Beneficial Finance Company of Jersey City v. Norton, 76 N.

J.Super. 577, 185 A.2d 218 (App.Div., 1962).

Indeed, any such factual finding would be without record support. Two conversations are referred to, the first on September 3, 1964, between Frank W. DiBiase, president of Douglas T., and Joseph Giganti, secretary of Shore Block, and the second on September 10 among DiBiase, Giganti and William H. Perlman, a partner in Lakeview.

DiBiase testified to the September 3 conversation:

"Q. Do you recall ever speaking with Mr. Giganti concerning the subcontract of July 8, 1964, and the provisions contained (92) therein?

"A. Yes, I remember on September 3 we were getting a little concerned about how the money was coming in. He was getting concerned about getting paid, and asked me at that time whether he could help me by putting a lien on the job. At that time I advised him that the contract had a no-lien provision in it.

"Q. What was his reaction?

"A. His reaction was it didn't mean anything and that if he wanted to put a lien on it, he would put a lien on it.

"Q. Was it your understanding as a result of that September 3, 1964 conversation that Mr. Giganti was aware of the no-lien provision contained in the subcontract of July 8, 1964?

"A. Yes, sir." (Appellant's Appendix 133a).

As to the September 10 conversation, Perlman testified (91a):

"Q. September 10. Will you tell the Court what happened when that requisition was paid?

"A. On September 10 I met with Frank DiBiase and Mr. Giganti from Shore Block because a couple of days before that Mr. Giganti had told me that he hadn't received any money from Douglas T Construction Company on this job. I arranged this meeting for the three of us being pres-

ent at which time I told Mr. Giganti that Douglas T was entitled to money under this contract. I showed him this affidavit that was being signed and told him under the terms of the contract between Donrich and Douglas T that there could not be any liens filed. Douglas T had signed such a contract, and I also told him that— Excuse me. He told me rather he was aware of this, not to worry about it, and it was all right to deliver this check to Douglas T, which was done in the amount of $5500.00."

Neither of these conversations could be construed as a waiver in fact of Shore Block's lien right. In the first, Giganti, rather than agreeing to waive plaintiff's rights, expressly asserted that as far as plaintiff was concerned "it [the contract] didn't mean anything." The second conversation evidenced at most a *pro tanto* waiver to the extent that Giganti would permit the payment of $5500 to Douglas T.

It is only fair to the District Judge to observe that apparently none of the parties presented to him, as they did not here, any question of express waiver in fact. It is equally appropriate to note that the record negates, rather than supports, any such idea.

Any waiver, then, which would bar plaintiff must be one implied by operation of law. New Jersey quite clearly implies a waiver of *liens against the property* as to subcontractors, Bates Machine Co. v. Trenton & New Brunswick Railroad Co., 70 N.J.L. 684, 58 A. 935 (E. & A. 1904), and materialmen, General Electric Co. v. E. Fred Sulzer, 86 N.J.Super. 520, 207 A.2d 346 (Law Div. 1965), aff'd, 92 N.J.Super. 210, 222 A.2d 655 (App.Div.1966), where the prime or subcontract so provides and the subcontractor or materialman proceeds with knowledge of the provision. There is no New Jersey case which implies a waiver of *stop notice rights*, as opposed to rights against the property by a materialman merely because the subcontract so provides. The question is, then, whether New Jersey would extend the fiction of

*Bates* to preclude stop notice rights. We think it would not.

The result in *Bates* flows from sound reasons of policy. When an owner deals with a prime contractor, he makes but a single contract. He places himself in the general contractor's hands. It is the latter's responsibility to employ subcontractors and the owner requires protection against encumbrances on the property. If subcontractors and materialmen could lien the property, the entire job may very well be disrupted. See ANNOT., 76 ALR2d 1087 (1961). The policy against any such possibility is clearly reflected in N.J.Stat.Ann. 2A:44–75, supra, which precludes subcontractors' and materialmen's liens when the contract has been filed. *Bates* is merely a judicial embodiment of this same policy of owner protection even though the contract was not filed.

The prime contractor, however, stands upon an entirely different footing. No reasons of policy emerge which demand protection for him. He is the one who engages the subcontractors and hence he is at the mercy of no one but himself. No lien against the property can arise to disrupt the progress of the work. And there appears no legislative intent to furnish the sort of protection that is granted to owners. On the contrary, when the protection of the owner has been accomplished by filing the contract, with the consequent removal of property lien protection for subcontractors, the legislature has expressly provided that sub-subcontractors and materialmen may look for payment to the moneys due to the contractor from the owner even though there is no obligation from the contractor to his immediate subcontractor. *Bates* is admittedly a fiction, but one established for a sound purpose. There is no reason to extend its holding to a situation where that purpose does not exist.

The evils against which the statutory scheme, as implemented by *Bates*, is designed to protect are manifest. But those evils do not inhere where the contractor is held liable to an unpaid ma-

terialman out of moneys due the subcontractor. On the other hand, to extend the *Bates* fiction would totally obliterate a needed protection for the materialman which the New Jersey legislature has shown every intention to afford. It would be totally inconsistent with the purposes and operation of this statutory framework to hold, in the absence of a directive from the New Jersey courts, that the mere insertion in an agreement between the contractor and subcontractor of a provision against stop notices bars the materialman who knows of that provision from filing a stop notice. On the contrary, we hold that the contracting parties in this case, Donrich and Douglas T., could not bind Shore Block simply by informing it of the restrictive clause.

## II.

Defendant-appellees assert that even if the right to file a stop notice was not waived, Shore Block may not reduce its claim to an enforceable judgment, because its subcontractor was insolvent when the stop notice was filed and a statutory receiver was appointed within four months thereafter. Thus, they argue, to permit a materialman to obtain a lien on the contractor's fund under such circumstances would be to sanction a preference void under the New Jersey insolvency laws. See N.J.Stat.Ann. 14:-14–25.[2] We do not agree.

■ There is no question that under the law of New Jersey, once a stop notice has been filed by a materialman, the later appointment of a receiver for his subcontractor has absolutely no effect on the validity or enforceability of the lien, be it on the premises or, as here, on the contractor's fund. Crane v. Brighton Mills, 98 N.J.L. 308, 120 A. 677 (1923); American Hardware Corp. of New York v. Board of Educ., 105 N.J.Eq. 462, 148 A. 205 (1930), aff'd American Hard-

ware Corporation of New York v. A. C. Galm, 107 N.J.Eq. 599, 154 A. 628; Ocumpaugh v. Linde & Griffith Co., 95 N.J.Eq. 228, 122 A. 817 (1923); see also Garretson v. Clark, 57 A. 414 (N.J.Ch. 1904); John Agnew Co. v. Board of Educ., 83 N.J.Eq. 49, 89 A. 1046 (1914), aff'd, 83 N.J.Eq. 336, 90 A. 1135 (1914); Board of Educ. of City of Elizabeth in Union County v. Zinc, 101 N.J.Eq. 78, 137 A. 713 (1927); ANNOT., 98 A.L.R. 323; cf. 4 AMERICAN LAW OF PROPERTY § 16.106F and note 22. Certainly, the materialman who has filed the proper statutory notice may reduce his claim to judgment. Crane v. Brighton Mills, supra; cf. Bankers Title and Abstract Co. v. Ferber Co., 15 N.J. 433, 105 A.2d 408 (1954).

The reason for this result is that the insolvent corporation itself has no property interest in the contractor's fund unless and until it perfects its own lien in that fund. In this sense, the problem is really only one of priority of liens. The unpaid subcontractor of course may himself assert a lien by way of stop notice on the funds in the owner's hands owing to the contractor. But until he does so, he has only the same inchoate right which any other subcontractor or materialman has upon performing services or furnishing goods. The receiver stands in the shoes of the insolvent; his rights rise no higher than those of the entity to whose management he succeeds. If the receiver promptly asserts a lien on the contractor's fund, he may thereby cut off the rights of subservient materialmen who have not yet filed liens. But if he fails to file a stop notice, the occurrence of the receivership itself will have no effect at all even on subsequent stop notices by materialmen. Ocumpaugh v. Linde & Griffith Co., supra.

As the court noted in Meyer v. Standard Accident Insurance Co., 114 N.J.L.

---

**2.** All levies, judgments, attachments or other liens obtained through legal proceedings against a corporation at any time when the corporation shall be insolvent, and within four months prior to the making of the application against it for the appointment of a receiver under this chapter shall be deemed null and void in case a receiver shall be appointed by the court and the assets of such corporation distributed in such proceedings.

483, 487, 177 A. 255 (E. & A. 1935), quoted with approval in the *Bankers Title* case:

> "When the [prime] contract and specifications are * * * filed, laborers and materialmen have inchoate liens against the owner for the amounts due them for the labor performed and materials furnished. * * * These inchoate liens can be perfected only by taking the necessary steps provided by [the Mechanics' Lien] act."

■■ Thus, the security interest afforded materialmen in the contractor's fund attaches at the very moment the materials are furnished. Filing a stop notice has the effect of perfecting the lien and unconditionally insulating it from the later claims of the insolvent subcontractor or his receiver.

### III.

■ One additional problem presented by the record on appeal concerns the claim of the United States represented by its tax lien against the insolvent Douglas T., which was concededly filed after Shore Block had filed its stop notice. Here, the problem is not one of priority of liens but of ascertaining whether the insolvent had any property right in the funds first garnished by Shore Block to which the government's tax lien could attach. Clearly, Douglas T. has no such interest, and although it might have obtained one, its inchoate rights were effectively severed by the prior filing of a stop notice by the materialman. Bankers Title and Abstract Co. v. Ferber Co., supra; Cattani v. Korsan, 32 N.J.Super. 210, 108 A.2d 110 (App.Div.1954); Board of Educ. of City of Pleasantville, v. Aiken, 69 N.J.Super. 70, 173 A.2d 527 (Ch.Div. 1961). Since the subcontractor never had the right to obtain the garnished funds, neither could the United States assert a tax lien on them.

The judgment of the District Court will be reversed and the cause remanded for further proceedings in accord with this opinion.