In re SHORE AIR CONDITIONING &
REFRIGERATION, INC.,
Debtor-in-Possession.

HARRY BRAINUM, JR., INC., Plaintiff,

v.

SHORE AIR CONDITIONING & RE-
FRIGERATION, INC., Defendant.

Bankruptcy Nos. 81–03762, 81–1412.

United States Bankruptcy Court,
D. New Jersey.

March 26, 1982.

Keith, Winters & Schueler by Michael L.
Detzky, Bradley Beach, N. J., for debtor-in-
possession.

Levin & Chenkin by Joshua M. Levin,
East Orange, N. J., for plaintiff.

## OPINION

AMEL STARK, Bankruptcy Judge.

On November 23, 1981 plaintiff Harry
Brainum, Jr., Inc., filed a complaint in these
proceedings against the debtor-in-posses-
sion, Shore Air Conditioning & Refrigera-
tion, Inc., alleging that it is entitled to

relief from the automatic stay of Bankruptcy Code § 362 for the reason that it had supplied materials to the debtor-in-possession for use on a construction project and filed a materialman's stop notice, pursuant to *N.J.S.A.* 2A:44–80, against the owner of the premises *after* the Petition under Chapter 11 of the Bankruptcy Code was filed. The proper filing of a stop notice has the effect of perfecting a lien against funds in the owner's hands. As a result of the filing of this stop notice, plaintiff asserts that it is entitled to the full value of the materials supplied, in the amount of $5,917.18, which the owner, Juniper Plaza Associates, Ltd., is holding in escrow, rather than merely sharing in the debtor's estate as a general, unsecured creditor.

In its answer, the debtor-in-possession denies that plaintiff is entitled to the sum of $5,917.18, or relief from the automatic stay, and asserts that plaintiff is only a general, unsecured claimant against the estate for materials supplied under contract. As a separate defense, defendant states that the filing of plaintiff's stop notice violated Bankruptcy Code § 362(a)(1), (4), for the reason that plaintiff is attempting to perfect a lien after the filing of the Petition under Chapter 11 of the Bankruptcy Code.

FINDINGS OF FACT

No hearing was held in this case, and the parties have submitted the following undisputed statement of facts:

1. The debtor-in-possession was a subcontractor under a contract with the Yetka Corporation on a certain project known as the Bell Laboratories office facility owned by the Juniper Plaza Associates Ltd.

2. Plaintiff provided the debtor-in-possession with certain materials valued at $5,917.18, no part of which has been paid.

3. The debtor-in-possession filed a Petition under Chapter 11 of the Bankruptcy Code on June 26, 1981.

4. On July 9, 1981, plaintiff filed a stop notice on the owner of the facility and served a copy of such notice on the contractor.

5. The contractor, through its attorney, as a result of plaintiff's stop notice and the stop notice of a third party (who is not a party to this litigation) is holding in escrow $25,000 representing money still due the debtor-in-possession under its subcontract.

No facts have been presented to this court regarding the "stop notice of a third party," and it is not in issue here. The parties have stipulated that the decision in this case will be rendered on the pleadings and briefs filed with the court.

ISSUES

The issues to be determined are: 1) was plaintiff's lien properly perfected pursuant to Bankruptcy Code § 546(b), and therefore, relief from the automatic stay should be granted to allow enforcement of the perfected lien, or 2) was plaintiff's alleged post-petition perfection of its lien invalid, for the reason that it was an attempt to perfect a lien against "property of the estate" as defined in Bankruptcy Code § 541 and thus violated the automatic stay of Bankruptcy Code § 362(a)(4)?

CONCLUSIONS OF LAW

The first issue, dealing with the applicability of Bankruptcy Code § 546(b), was thoroughly discussed in this court's opinion in *Matter of Valairco, Inc.*, 9 B.R. 289, 7 B.C.D. 374 (Bkrtcy., B.C.D.N.J.1981), aff'd in relevant part in an unpublished, oral opinion by the Honorable Harold A. Ackerman, U. S. District Court Judge for the District of New Jersey, Civil No. 81–866, dated June 1, 1981. The *Valairco* case has facts very similar to those in the present one. For the reasons stated in the *Valairco* opinion, this court holds that plaintiff's lien was not properly perfected under Bankruptcy Code § 546(b), and therefore, relief from the automatic stay on this ground is denied.

Judge Ackerman also remanded the *Valairco* case to this court for a determination as to whether funds in an owner's hands, which could be subject to the New Jersey stop notice statute, *N.J.S.A.* 2A:44–80, are "property of the estate," under Bankruptcy

Code § 541(a)(1). The automatic stay of Bankruptcy Code § 362(a)(4) would apply only if the funds in the owner's hands were "property of the estate" at the time the debtor-in-possession filed its Chapter 11 Petition. If a subcontractor has no "legal or equitable interest" in the funds held by the owner of a construction project, the funds would not have been a part of the debtor-in-possession's estate when its Petition was filed, and thus, no automatic stay would have been triggered against those funds.

After Judge Ackerman remanded the *Valairco* case, the remaining issue was settled by a compromise approved by this court after notice. There is, therefore, left for decision in the instant matter the issue as to whether an owner's funds are "property of the estate" and, thus, subject to an automatic stay preventing the subsequent filing of stop notices against the funds. That issue must now be addressed.

Section 362 of the Bankruptcy Code [11 U.S.C. § 362] provides in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
>
> . . . .
>
> (4) *any act to* create, *perfect,* or enforce *any lien against property of the estate* ; [emphasis supplied]

This stay is effective only against "property of the estate" defined in Bankruptcy Code § 541(a)(1) [11 U.S.C. § 541(a)(1)] as follows:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, *all* legal or *equitable interests* of the debtor in property as of the commencement of the case. [emphasis supplied]

The legislative history to this section confirms that it was intended to be all-encompassing:

> . . . Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act section 70a(6), and all other forms of property currently specified in section 70a of the Bankruptcy Act section 70a, [*sic*] as well as property recovered by the trustee under section 542 of proposed title 11, if the property recovered was merely out of the possession of the debtor, yet remained "property of the debtor." The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or leasehold interest, for example.

[House Report No. 95–595, 95th Cong., 1st Sess. 367–8 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323.]

■ Section 541(a)(1) introduced a great change from prior law under the old Bankruptcy Act as to what interests are included in the "estate," as explained in 4 *Collier on Bankruptcy* § 541.08 and § 541.09 (15 ed. 1981):

> Under former section 70a(5) of the Bankruptcy Act it was necessary to determine whether, under the applicable state law, the personal property involved could have been "by any means . . . transferred or . . . levied upon and sold under judicial process against" the bankrupt, or could have been "otherwise seized, impounded, or sequestered," at the time the petition was filed. This requirement has been omitted from the Code and pursuant to section 541(a)(1) all interests of the debtor in personal property, wherever located, as of the commencement of the case become property of the estate. [at 541–38]
>
> Property rights which by their nature on their terms were to some extent personal to the debtor often created puzzling problems under the Bankruptcy Act regarding the trustee's title thereto. Under the Act such property rights were

governed by section 70a(5) and consequently whether the trustee succeeded to title depended upon the nature of the property in the debtor's hands—that is, whether it was transferable, or could be levied upon and sold or otherwise seized, impounded, or sequestered. Under the Code, *all* interests of the debtor in property come into the estate pursuant to section 541(a)(1) regardless of whether they are transferable or creditors could have by some means reached them. [at 541–54]

The ·clear wording of the statute and the intent of the drafters demonstrate that the scope of the statute is very broad and encompasses *all* interests of the debtor as of the date its petition is filed. See *State of Mo. v. U. S. Bkrtcy. Court*, 647 F.2d 768 (8 Cir. 1981), cert. den. —— U.S. ——, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1981), in which the court held that a debtor's interest in grain, consisting of possession and a minute ownership interest, was sufficient to qualify it as "property of the estate;" *In Re Alpa Corp.*, 11 B.R. 281, 287, 7 B.C.D. 791, 4 C.B.C.2d 1298 (Bkrtcy.B.C.D.Utah 1981), where the court held that the IRS was required to turn over property because "whether the United States has a greater interest in levied upon property at the filing of bankruptcy is immaterial, for as long as the debtor has an interest, that interest will fit into the pervasive definition of Section 541;" *In Re Boyd*, 11 B.R. 690, 692 (Bkrtcy., B.C.W.D.Va.1981), in which the court stated that the scope of what is property of the estate is now much broader than under the old Act, and it is "almost limitless."

 There are no definitions of "property" or "interests" as used in section 541(a) of the Bankruptcy Code. The general rule is that state law defines the "interests" in property, federal law controls the issue of whether property, as so defined, becomes property of the debtor's estate. *State of Mo. v. U. S. Bkrtcy. Court*, supra, 647 F.2d at 773. Thus, New Jersey law defines the scope of plaintiff's interest in the funds held by the owner of the premises, Juniper Plaza Associates, Ltd. The Supreme Court of New Jersey, in *Friedman v. Stein*, 4 N.J. 34, 71 A.2d 346 (1950), explained the nature of any subcontractor's or materialman's claim for payment *before* perfection as follows:

The *claim for labor and materials is a property right* which does not ripen into an enforceable lien on the land and building until there has been substantial compliance with all the statutory conditions prerequisite. This is a familiar rule of construction. It is fundamental that the lien does not materialize until all the statutory requisites are met. This by legislative ordinance. [citations omitted] The statutory lien is separate and distinct from the underlying debt; the lien affords a cumulative remedy for the enforcement of the debt. *Shoemaker v. Maloney, supra.* [102 N.J.L. 363 [132 A. 606] (E. & A.1926)] The claimant's status is that of a general creditor until those things are done which give him the security of the statutory lien. Until then, the lien is inchoate merely. [4 N.J. at 41, 71 A.2d 346; emphasis supplied]

See also *Bankers Title and Abstract Co. v. Ferber Co.*, 15 N.J. 433, 443, 105 A.2d 408 (1954), in which the Court referred to subcontractors' and materialmen's rights under the stop notice statute as an inchoate property right which was subject to being superseded, in terms of lien priority, by a prior filing of another's stop notice. Therefore, under applicable state law, it is clear that all subcontractors and materialmen, including the debtor-in-possession, have an inchoate property right' which can certainly be termed an "equitable interest" in an owner's funds due under a construction contract.

It is anomalous that plaintiff is seeking post-petition to enforce its own equitable interest in the funds, yet denies that the debtor-in-possession has *any* interest in the funds. On the date the Chapter 11 Petition was filed, both plaintiff and the debtor-in-possession had identical, equitable interests in the funds in the owners' hands in the nature of inchoate liens; on the date the Chapter 11 petition was filed, neither had a greater right to the funds.

Although the debtor-in-possession did not have a perfected lien on the funds when it filed its Petition, that is not the test for inclusion in the "estate." Once the debtor-in-possession's equitable interest has been established, it makes no difference that it did not have any *legal* interest in the funds and could not have had such a legal right until a stop notice was filed. The debtor-in-possession's equitable interest was sufficient to bring the funds into the estate, as defined by section 541(a)(1) of the Bankruptcy Code and precluded any further action by others from being taken against funds which the owner owed under the contract. The fact that plaintiff and the debtor-in-possession had the same equitable interest in funds in the owner's hands on the date the debtor-in-possession's Chapter 11 Petition was filed did not give plaintiff any greater interest in the money, such as the right to file a stop notice, thereafter. As of the date the Petition under Chapter 11 of the Bankruptcy Code was filed, the automatic stay of Bankruptcy Code § 362(a)(4) applied to "property of the estate" including the debtor-in-possession's interest in the owner's funds, and no other subcontractor or materialman could take any step to perfect its inchoate lien.

Although transferability and leviability are no longer the tests as to inclusion of any right or interest in "property of the estate," the debtor-in-possession's inchoate property right is also an alienable right. See *Bankers Title and Abstract Co. v. Ferber Co.*, supra, 15 N.J. at 437, 105 A.2d 408, where a subcontractor executed an assignment of its inchoate rights before any stop notice was filed. Thus, the debtor-in-possession's equitable interest in the funds is clear and identifiable.

The recognition of the debtor-in-possession's equitable interest in the funds as "property of the estate" comports with the stated purpose of the present Bankruptcy Code "to establish a uniform system to place the property of the bankrupt, wherever it is, under the control of the court for equal distribution among creditors." See *In Re Visiting Home Services, Inc.*, 643 F.2d 1356, 1360 (9 Cir. 1981). Plaintiff's argu-

ment that its stop notice is valid would allow it to receive a much greater payment than it would as a general creditor with an unsecured claim against the estate. This would be detrimental to other creditors and the entire distribution of the estate. Plaintiff has a claim against the estate, but it has no right to improve its position, at the expense of other creditors, subsequent to the date the debtor-in-possession's Petition was filed. Congress could not have intended such a result, but clearly did intend to bring all of a debtor's equitable interests into the estate in order to avoid such a result.

In spite of the debtor-in-possession's inchoate lien on the funds, plaintiff claims generally that the debtor-in-possession has no legal or equitable interest in the funds. In support of its claim, plaintiff relies on the cases *Ocumpaugh v. Linde & Griffith Co.*, 95 N.J.Eq. 228, 122 A. 817 (E. & A.1923), and *Shore Block Corp. v. Lakeview Apartments*, 377 F.2d 835 (3 Cir. 1967). Even though these cases are factually similar to the present case, they were decided under the prior Bankruptcy Act and not the new Bankruptcy Code, which became effective on October 1, 1979 and which greatly expanded the type of "property" or "interests" which must be included in a bankruptcy estate.

In *Ocumpaugh v. Linde & Griffith Co.*, supra, 95 N.J.Eq. 228, 122 A. 817, a stop notice was filed, under the predecessor to *N.J.S.A.* 2A:44–132 which is very similar to the statute in the present case, by a materialman against a municipality *after* a subcontractor filed its Petition in Bankruptcy Court. The Court held that the stop notice was valid to perfect the materialman's lien against funds in the owner's hands, thus reducing the amount which was paid to the bankrupt subcontractor. However, the court relied on the fact that the bankrupt subcontractor had no *legal* interest in the funds and stated, "The only manner in which the [subcontractor] could have a legal interest in and a lien upon the funds in question would have been by taking proceedings under the [mechanics' lien] stat-

ute." 95 N.J.Eq. at 231, 122 A. 817. The court did not discuss the subcontractor's equitable right to funds in the owner's hands, which is the sole issue here. This court is convinced that the debtor-in-possession in the present case had no *legal* right to or *legal* interest in the funds held by Juniper Plaza Associates; the debtor-in-possession has no privity of contract with Juniper Plaza Associates, and it did not file a stop notice against Juniper Plaza. However, there is also no doubt that the debtor-in-possession does have an equitable interest in the funds since it has an inchoate lien and a general claim for payment. The court in *Ocumpaugh* did not deal with the existence of equitable interests for the reason that it was not necessary for the determination in that case.

Similarly, the Third Circuit in *Shore Block Corp. v. Lakeview Apartments*, supra, 377 F.2d 835, 840, cited *Ocumpaugh* and stated in *dictum* that "the occurrence of the receivership itself will have no effect at all even on subsequent stop notices by materialmen." The Third Circuit acknowledged that an insolvent subcontractor has "the same inchoate right which any other subcontractor or materialman has upon performing services or furnishing goods," but based its *dictum* on the fact that no subcontractor had a legal right to the funds until its lien was perfected. 377 F.2d at 840. As previously stated, however valid this analysis may have been under the old Bankruptcy Act, the present Bankruptcy Code definition of the "property of the estate" includes far more than vested legal interests; the Bankruptcy Code includes "all" equitable interests as well, regardless of whether they are transferable, alienable, contingent, inchoate or otherwise.

CONCLUSION

Given the all-encompassing nature of what constitutes "property of the estate" under Bankruptcy Code § 541(a)(1), defendant's equitable interest in the funds held by Juniper Plaza Associates require that those funds, to the full extent of the amount due defendant, must be included as "property of the estate." The filing of Petition under Chapter 11 of the Bankruptcy Code by the debtor-in-possession was the triggering event which caused the automatic stay of Bankruptcy Code § 362(a)(4) to become effective. By its terms, this statute stayed any action to perfect any lien against property of the estate, which plaintiff attempted to do by filing its stop notice. Thus, plaintiff's stop notice was in violation of the automatic stay and invalid. Plaintiff cannot interfere with the orderly distribution of the estate by taking such post-petition action. As the holder of an unsecured claim against the estate, plaintiff has not presented sufficient reason to allow it relief from the automatic stay.

Let an order be submitted denying the relief requested by plaintiff in its complaint and vacating the post-petition stop notices filed against Juniper Plaza Associates, Ltd.