In the Matter of ESTEVES EXCAVA-
TION, INC. and Esteves Construction
Co., Inc., New Jersey Corporations,
Debtors.

Bankruptcy No. 82–08539.

United States Bankruptcy Court,
D. New Jersey.

Aug. 15, 1983.

See also 56 B.R. 802.

OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

The debtor, Esteves Excavation, Inc. (Esteves), seeks an order directing the Sussex County Municipal Utilities Authority (Authority) to turn over approximately $63,000 allegedly earned by the debtor under a public improvement construction contract prior to the filing of its bankruptcy petition. The request for a turnover order was filed simultaneously with a motion to assume the contract pursuant to 11 U.S.C.

§ 365. The debtor acknowledges that it would not have the financial ability to assume the contract unless the funds in question are turned over.

The relevant factual history of this matter dates from October 29, 1981, when the Authority awarded a construction contract to Esteves, obligating Esteves to construct a sewer line to be part of the Upper Wallkill Sanitary Sewerage Project currently under construction. Esteves proceeded to engage subcontractors to work on the project. In addition, International Fidelity Insurance Company (IFIC or the Surety) executed performance and payment bonds as required of a contractor, pursuant to N.J.S.A. 2A:44–143, *et seq.*, commonly referred to as the Bond Act.

In November of 1982, the Authority received a notice of levy filed by the Internal Revenue Service (IRS) against all funds held by the Authority for the benefit of Esteves.

On December 10, 1982, Esteves filed a petition for reorganization under chapter 11 of the Bankruptcy Code and has since been operating as debtor-in-possession.

From the date of filing until January 25, 1983, six notice of lien claims totaling $132,338.02 were filed with the Authority, pursuant to the Municipal Mechanic's Lien Law, N.J.S.A. 2A:44–125, *et seq.* Two of the notices were filed the day the petition was filed. The record, however, does not indicate whether these notices were filed prior or subsequent in time to the filing of the petition. All of the notices were filed notwithstanding that the lien claimants had not obtained modification of the automatic stay imposed by 11 U.S.C. § 362.

On March 14, 1983, the Authority moved for an order under § 365[d][2] of the Bankruptcy Code directing the debtor to either assume or reject the construction contract. On March 17, 1983, the debtor filed a "cross motion" for an order authorizing assumption of the contract and a motion for an order directing the Authority to turn over "all funds in its possession to the debtor for services performed heretofore." The debtor failed to file supporting affida-

vits, nor did it present any proof at the hearing establishing the existence or extent of its right to payment under the contract. In its brief, however, the debtor states that the Authority approved progress payment vouchers for approximately $63,000 in the fall of 1982. It is this fund which the debtor seeks to recover and use toward completion of the construction contract.

It should be noted that, although the record does not indicate whether the surety has disbursed funds on account of its bond obligations, the brief submitted by the surety represents that disbursements have not been made.

Determination of whether the debtor is entitled to possession and use of the funds held by the Authority involves an analysis of sections 541, 542 and 363 of the Bankruptcy Code. Section 542[a] requires an entity in possession of "property that the trustee may use, sell, or lease under § 363" to turn over that property to the trustee or to the debtor-in-possession.[1] Section 363 permits the trustee or debtor-in-possession to use any "property of the estate", subject to certain conditions for the protection of creditors with an interest in the property.

Section 542[b] provides generally that an entity that owes a debt that is property of the estate as of the commencement of the case shall pay such debt to the debtor-in-possession, who may use such money if the conditions of § 363 are met.

Under § 541[a][1], the "estate" is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541[d], however, modifies section 541[a][1] by providing that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection [a] of this section only to the extent of the debtor's legal title to such property." Thus, if Esteves holds legal and equitable interests in the funds held by the Authority, § 542 would authorize turnover, and Esteves would be entitled to use

the money so long as it provides adequate protection for those with interests in the property.

■ It is well established that, although federal bankruptcy law defines property of the estate, nonbankruptcy law determines the scope of the debtor's interests therein. *Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 773 (8th Cir.1981); *GMAC v. Morgan (In re Morgan)*, 23 B.R. 700, 702 (Bankr.E.D.Pa.1982); 4 *Collier on Bankruptcy* ¶ 541.02 at 541–10 (15th ed. 1982).

The trust fund doctrine contained in N.J. S.A. 2A:44–147 provides in relevant part:

[a]ll money *paid* ... to any person pursuant to the provisions of any contract for any public improvement ... shall constitute a trust fund in the hands of such person as such contractor, until all claims for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid. (Emphasis supplied.)

In *Montefusco Excavating & Contracting Co., Inc. v. Middlesex County*, 82 N.J. 519, 525–526, 414 A.2d 961 (1980), the New Jersey Supreme Court held that the benefits of the trust fund doctrine apply not only to subcontractors and materialmen, but to sureties who satisfy claims against the contractor.

Although the statutory trust fund doctrine applies only to money "paid" to the contractor, *see National Surety Corp. v. Barth*, 11 N.J. 506, 511, 95 A.2d 145 (1953), the New Jersey Supreme Court has held that moneys not yet paid may, in the proper circumstances, be impressed with a constructive trust. *Id.* at 511–515, 95 A.2d 145. In *National Surety Corp. v. Barth, supra*, the court, analyzing the source and purpose of the funds held by the Public Housing and Development Authority, did, after finding that the funds were raised by means of state and federal appropriations and from a bond issue and that they were specifically earmarked for housing im-

---

**1.** Although § 542 expressly provides a trustee with turnover rights, such rights are extended to a debtor-in-possession by reason of 11 U.S.C. § 1107.

provements contracted for by the Authority, impose a constructive trust upon those funds for the benefit of laborers, materialmen and the surety.

 Upon application of the noted New Jersey law, Esteves has a legal interest in the funds to the extent that they have been earned.[2] The Court concludes, however, that to the extent subcontractors have not been paid, Esteves does not have an equitable interest in the funds because, pursuant to the Trust Fund Act, that amount is impressed with a trust immediately upon payment to the debtor.

The same conclusion is reached by applying the constructive trust theory, applicable in the circumstances under consideration, since the funds held by the Authority were derived from federal and state grants and from a bond issue, and are to be used to construct the project on which the subcontractors worked. *See Barth, supra.*

Accordingly, the amount of the fund impressed with the trust is not property of the estate and, therefore, is not subject to a turnover order and may not be used by Esteves.

To determine to what extent any portion of the funds held by the Authority is property of the estate, a hearing is required with proof to be submitted regarding:

1. the amount of money owed to the debtor by the Authority under the contract;

2. the amount of money the debtor owes to those entitled to the benefits of the Trust Fund Act and the constructive trust.

The Court also suggests that all parties alleging liens against the fund should offer proof to substantiate the amount of their lien claims and when obtained. In the event any of the funds are determined to be property of the estate, the Court will rule on the validity of the liens. Though the existence of liens would not preclude the debtor from obtaining and using funds which are property of the estate, such right is conditioned on providing adequate protection to lien holders requesting such security. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

In summary, the Court finds the record insufficient to determine what, if any, portion of the funds held by the Authority should be turned over to Esteves. As noted, an evidentiary hearing must be held to determine (1) what portion of the funds are property of the estate (i.e., not subject to a trust fund); (2) the validity and extent of the alleged liens which will attach to funds which are property of the estate; and (3) whether the lien holders' interests are adequately protected.

Counsel are to contact the Court for the scheduling of the above noted hearing. Submit order.

---

**2.** The debtor cites *In re Shore Air Conditioning & Refrigeration, Inc.*, 18 B.R. 643 (Bankr.D.N.J. 1982) for the proposition that it holds an equitable as well as a legal interest in the funds held by the Authority. *In re Shore*, however, is not relevant to the case under consideration because it involved a determination of the rights of a debtor-*subcontractor* in funds held by an owner of a private construction project.