**In the Matter of VALAIRCO, INC., a Delaware corporation, Debtor.**

**ATC SYSTEMS, INC., Plaintiff,**

**and**

**Jersey Insulation Corp., and The Trane Co., Intervenors,**

**v.**

**VALAIRCO, INC., a Delaware corporation, Defendant.**

**Bankruptcy No. 80–04172 (80–0742).**

United States Bankruptcy Court, D. New Jersey.

Feb. 24, 1981.

Ravin, Katchen & Greenberg by William S. Katchen, Newark, N. J., for defendant-debtor Valairco.

Lindabury, McCormick & Estabrook by Edward J. Frisch, Westfield, N. J., for plaintiff ATC Systems, Inc.

Schiffman & Berger by Richard Berger, Carlstadt, N. J., for plaintiff Jersey Insulation Corp.

John J. McLaughlin & Associates by John J. McLaughlin, Millburn, N. J., for plaintiff The Trane Co.

### OPINION

ON COMPLAINT OF ATC SYSTEMS, PLAINTIFF, JERSEY INSULATION CORP., and THE TRANE CO., INTERVENORS TO VACATE AUTOMATIC STAY, OR TO DETERMINE AUTOMATIC STAY INAPPLICABLE

AMEL STARK, Bankruptcy Judge.

On October 8, 1980, Valairco, Inc., a Delaware Corporation, authorized to do business in New Jersey ("Valairco") filed a Petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. An Order for Relief was entered on the same day.

Thereafter, within the allotted time, ATC Systems, Inc. ("ATC") commenced an adversary proceeding against the debtor-in-possession, Valairco, (a) for the purpose of

having the automatic stay provision of Section 362(b)(3) of the Bankruptcy Code modified to permit ATC to file a notice of refusal of payment (commonly known as a "stop notice" pursuant to N.J.S.A. 2A:44–77; or (b) to seek a determination that the automatic stay provisions of the Bankruptcy Code do not apply to this cause of action, pursuant to Section 546(b) of the Bankruptcy Code. ATC's present action has been precipitated by an Order of this Court, entered on October 22, 1980, pursuant to Valairco's motion that the stop notice previously filed by ATC one day after the filing of the Petition for Reorganization by the debtor, be vacated as violative of subsection (a)(4) of Section 362 of the Bankruptcy Code (Automatic stays).

Pursuant to an Order entered by this Court on December 24, 1980, Jersey Insulation Corp. and the Trane Company, also suppliers of materials to debtor, were permitted to intervene as parties plaintiffs, both of these companies having also filed "stop notices" subsequent to October 8, 1980, the date of the filing of the Petition for Reorganization by the Debtor.

No testimony was taken in this matter, all parties having submitted Statements of Facts and Conclusions of Law. There is no dispute as to the relevant issue presented, namely: May a creditor, a subcontractor of a debtor-in-possession (the debtor being itself a subcontractor under a construction contract) perfect a lien upon funds in the hands of the owner, contractually due the debtor-in-possession by the general contractor, subsequent to the filing of a Petition under Chapter 11 of the Bankruptcy Code, where such funds will not be paid by the holder of such funds directly to the debtor, but will be paid to the general contractor who will make payment to such subcontractor?

### FINDINGS OF FACT

1. Brown and Matthews, Inc. is a general contract builder, and as such entered into a contract with Peerless Photo Products, Inc. ("Peerless") to erect a structure or structures upon premises owned by Peerless.

2. On April 3, 1980 the building contract and related specifications between the aforementioned Brown and Matthews, Inc. and Peerless were filed with the Clerk of the County of Essex, New Jersey, the county in which the construction project is located.

3. Debtor-in-possession, Valairco, is a subcontractor of Brown and Matthews, Inc. Plaintiffs ATC, Jersey Insulation Corp. and The Trane Company ("Plaintiffs") are subcontract materialmen of Valairco. By the terms of its contract with Brown and Matthews, Inc., Valairco is prohibited from filing a "stop notice" with Peerless. However, the same restrictions do not apply to materialmen or laborers contracting with Valairco.

4. As previously stated, on October 9, 1980, the day after the Petition for Reorganization was filed, ATC filed a stop notice with the Clerk of the County of Essex, New Jersey. Jersey Insulation, Inc. followed suit on October 16, 1980 as did The Trane Company on October 20, 1980.

5. As previously stated, after setting up safeguards to guarantee payment in the event that it was finally determined that pursuant to Section 546(b) of the Bankruptcy Code, claimants should be permitted to file stop notices, this court ordered the stop notice of ATC vacated on October 22, 1980. By Order dated December 24, 1980, this court ordered *all* stop notices vacated and cancelled, and as a result of that Order, Jersey Insulation, Inc. and The Trane Company also vacated the stop notices filed by them.

6. As of this date, to the Court's knowledge, no further stop notices have been filed.

### CONCLUSIONS OF LAW

#### I.

Section 362 of the Bankruptcy Code (11 U.S.C. Section 362) (Automatic stay) provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

\* \* \* \* \* \*

(4) any act to create, perfect, or enforce any lien against property of the estate;

\* \* \* \* \* \*

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

\* \* \* \* \* \*

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title . . . .

Subsection (b) of Section 546 of the Bankruptcy Code (11 U.S.C. section 546) (Limitations on avoiding powers) provides:

(b) The rights and powers of the trustee under section 544, 545, or 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

Thus, when read together, these sections of the Bankruptcy Code act, as the title of section 546(b) implies, to weaken the "strong arm" of the trustee or debtor-in-possession where all of the requirements of the exceptions of subsection (b) of section 546 are met.

The legislative history of Section 546(b) of the Bankruptcy Code reads as follows:

The trustees's rights and powers under certain of the avoiding powers are limited by section 546. First, if an interest holder against whom the trustee would have rights still has, under applicable non-bankruptcy law, and as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee. If applicable law requires seizure for perfection, then perfection is by notice to the trustee instead. The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, *and that perfection relates back to a date that is before the commencement of the case.* (Emphasis added).

The phrase "generally applicable law" relates to those provisions of applicable law that apply both in bankruptcy cases and outside of bankruptcy cases. For example, many State laws under the Uniform Commercial Code, permit perfection of a purchase-money security interest to relate back to defeat an earlier perfected non-purchase-money security interest if the former was perfected within ten days. U.C.C. section 9–301(2). Such perfection would then be able to defeat a hypothetical judicial lien creditor on the date of the filing of the petition. The purpose of the subsection is to protect, in spite of the surprise intervention of bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interest as of an effective date that is earlier than the date of perfection. It is not designed to give the States an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases.

House Report No. 95–595, 95th Cong., 1st Sess. (1977) 371, U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6327; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 86, U.S.Code Cong. & Admin.News 1978, 5787, 5872.

■ It is apparent that both the House and Senate Committees, charged with the revision of the Bankruptcy Act, realized that there could be and are situations where, under non-bankruptcy law, it is necessary to permit a party having a partially perfected lien as the result of a previously

instituted legal action to complete such action in order to secure a complete lien. It is also apparent from a reading of the legislative history that, in order to take advantage of Section 546(b) of the Bankruptcy Code, the lien when perfected must relate *back* to a date that is before the commencement of the case. The history clearly indicates that its purpose is *not* to permit a creditor, who itself has taken no action prior to the filing of the case, to perfect a lien *subsequent* to the filing of the case. Under the New Jersey Stop Notice procedure, the filing of a Stop Notice does *not* relate back to the time of supplying of materials or rendering of services, but is effective as of the date of filing with the Owner.

## II.

*Shore Block Corp. v. Lakeview Apartments*, 377 F.2d 835 (3rd Cir. 1967) clearly sets forth the mechanic's lien scheme, as promulgated in New Jersey:

(1) Before a contractor, subcontractor, or materialman can assert a lien against the property, he must file a "notice of intention" before work under the contract has begun. N.J.Stat.Ann. 2A:44–71.

(2) However, if the prime contract between the owner and the general contractor is filed with the proper county clerk, thereafter the subcontractors and materialmen are precluded from filing the notice of intention, and hence from asserting a lien against the property. N.J.Stat. Ann. 2A:44–75.

(3) When the prime contract has been filed, the lien protection is supplanted by the subcontractors' and materialmen's right to file a "stop notice." N.J.Stat. Ann. 2A:44–77; *Meyer v. Standard Accident Ins. Co.*, 114 N.J.L. 483, 177 A. 255 (E & A 1935).

(4) The stop notice, which is filed against the owner of the premises, but not against the property, results in a garnishment of funds in the hands of the owner which are owing to the prime contractor. Where it is filed by a materialman or sub-contractor, it is effective even though the prime contractor has satisfied his own obligation to his own subcontractor, N.J.Stat.Ann. 2A:44–78; *Arrow Builders' Supply Corp. v. Hudson Terrace Apts.*, 15 N.J. 418, 105 A.2d 387 (1954).

(5) The remedy by stop notice is available only when the right to file a notice of intention, and thus to obtain a mechanics' lien, is foreclosed by the filing of the prime contract. *English v. Warren*, 65 N.J.Eq. 30, 54 A. 860 (Ch. 1903); 377 F.2d at 837.

N.J.S.A. 2A:44–77 is as follows:

2A:44–77. Notice of refusal to pay claim filed by materialman, journeyman; filing; contents.

When any contractor or subcontractor refuses, upon demand, to pay any person who has furnished him materials for use in or about the erection, construction, completion, alteration, repair or addition to any building in section 2A:44–75 of this title, or to pay any subcontractor, journeyman or laborer employed by him in erecting, constructing, completing, altering, repairing or adding to any building the money or wages due him, the materialman, subcontractor, journeyman, or laborer shall file with the proper county clerk, a written notice of the refusal and the amount due and demanded, specifying the amount as nearly as possible, the name of the owner, the name of the person filing the notice, and the location of the property affected.

N.J.S.A. 2A:44–78 is as follows:

2A:44–78. Retention by owner of amount due; notice by claimant upon owner; notice by owner.

After such notice is filed pursuant to section 2A:44–77 of this title, the owner of such building shall thereupon be authorized to retain the amount so due and claimed by such materialman, subcontractor, journeyman, or laborer out of the amount owing by him on the contract or that may thereafter become due from him on such contract for labor performed or materials furnished for such building. The claimant may, after filing such notice, serve a copy thereof upon the owner of the building.

After receiving a copy of such notice, the owner shall serve written notice of such notice and demand upon the contractor and any subcontractor.

### III.

N.J.S.A. 2A:44–64 *et seq.*, which comprises the New Jersey Mechanics Lien law, must be strictly construed. *Sharav v. Scott,* 37 N.J.Super. 224, 117 A.2d 175 (1955). While decisional law may afford the court some guidance, it is statutory law which gives mechanics' and materialmen's liens their vitality; these liens have no independent recognition in equity being in derogation of the common law. *J. T. Evans Co. v. Fanelli,* 59 N.J.Super. 19, 157 A.2d 36 (1960), *Sheer Bros., Inc. v. Marlboro Home Builders, Inc.,* 156 N.J.Super. 451, 383 A.2d 1225 (1978).

In *Friedman v. Stein,* 4 N.J. 34, 71 A.2d 346 (1950), the New Jersey Supreme Court after reiterating the principle of strict construction of statutory liens, clearly explained the status of such liens prior to their perfection:

The claim for labor and materials is a property right which does not ripen into an enforceable lien on the land and building until there has been substantial compliance with *all* the statutory conditions prerequisite. This is a familiar rule of construction. It is fundamental that the lien does not materialize until *all* the statutory requisites are met. This by legislative ordinance. *Bartley v. Smith,* 43 N.J.L. 321 (Sup.Ct. 1881); *Bayonne Building Ass'n v. Williams,* 59 N.J.Eq. 617 [43 A. 669] (E. & A. 1899); *McNab & Harlin Mfg. Co. v. Paterson Building Co.,* 72 N.J.Eq. 929 [67 A. 103] (E. & A. 1907); *J. C. Vreeland Building Co. v. Knickerbocker Sugar Refining Co.,* 75 N.J.L. 551 [68 A. 215] (E. & A. 1907); *Austin v. Leer,* 101 N.J.L. 53 [127 A. 161] (Sup.Ct. 1925); *West Jersey Homeopathic Hospital v. Gibbs,* 103 N.J.Eq. 262 [143 A. 316] (Ch. 1928); *White & Shauger, Inc. v. Strait,* 10 N.J.Misc. 133 [157 A. 889] (1932); *Passaic-Bergen Lumber Co. v. Currie,* [111 N.J.L. 63, 166 A. 711 (Sup.Ct. 1933)]. The statutory lien is separate and distinct from the underlying debt; the lien affords a cumulative remedy for the enforcement of the debt. *Shoemaker v. Maloney* [102 N.J.L. 363, 132 A. 606, E.C.A. 1926]. The claimant's status is that of a general creditor until those things are done which give him the security of the statutory lien. Until then, the lien is inchoate merely, *(emphasis added ).*

4 N.J. at 41, 71 A.2d 346.

Further, in *In re Matthews Associates, Inc.,* 394 F.2d 101 (3rd Cir. 1968), the United States Court of Appeals for the Third Circuit stated that a construction subcontractor's materialmen had no legally recognized right to funds owed a bankrupt subcontractor by a general contractor under New Jersey law.

### IV.

In order to employ the exception as set forth in subsection (b) of Section 546 of the Bankruptcy Code, "an interest in property" must exist. This court sees no such interest established in the instant matter. Indeed, subsection (2) of section 545 of the Bankruptcy Code (11 U.S.C. Section 545) (statutory liens) permits a trustee to avoid a statutory lien on the debtor's property where such lien:

(2) is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser that purchases such property on the date of the filing of the petition, whether or not such a purchaser exists. . . .

As previously indicated, the legislative history of section 546(b) of the Bankruptcy Code states that a trustee cannot defeat a statutory lien which "relates back to an earlier date." Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 85–86, U.S.Code Cong. & Admin.News 1978, 5871. No mention is made of liens which do not relate back for presumably the drafters of the Bankruptcy Code intended that, absent language within the state statute giving rise to a purported lien, it must be assumed that such liens are susceptible to the trustee's avoiding power. Nothing in N.J.S.A.

2A:44–77 *et seq.* indicates that a lien perfected by a stop notice relates back to an earlier date; state law, thus affords no protection to the holder of a stop notice lien perfected subsequent to the intervention of bankruptcy. *See* 4 Collier on Bankruptcy, Paragraph 545.04 p. 545–20. (15th ed. 1979)

Plaintiffs' claims of liens are dealt a fatal blow, given the definition of "purchaser" (as modified by the definition of "transfer") in subsections (32) and (40), respectively, of Section 101 of the Bankruptcy Code (11 U.S.C., Section 101) (Definitions) which reads:

(32) "purchaser" means transferee of a voluntary transfer and includes immediate or mediate transferee of such a transferee;

(40) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest.

■ A perfected secured creditor's lien is, thus, a purchase within the contemplation of the drafters of the Bankruptcy Code, and, as such, renders a subsequent mechanics-type lien avoidable by a trustee.

This construction is in harmony with New Jersey law. First, the definitions section of New Jersey's enactment of the Uniform Commercial Code (N.J.S.A. 12A:1–201) states:

(32) "Purchase" includes taking by sale discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property.

Second. New Jersey courts have not definitively ruled on the issue of priority as between non-possessory *secret* liens and a perfected security interest. *In re Mission Marine*, 633 F.2d 678 (3rd Cir. 1980). *See also Board of Education v. Kolman*, 111 N.J.Super. 585, 270 A.2d 64 (Ch. 1970).

## V.

To allow Plaintiffs to prevail would effectively sanction a secret lien which this court declines to do. The United States Court of Appeals for the Third Circuit, in overturning a district court's reversal of a Bankruptcy Court decision, reiterated New Jersey's policy against secret non-possessory liens, citing with approval *Lanterman v. Luby*, 96 N.J.L. 255, 259, 114 A. 325 (E & A 1921):

Secret liens upon chattels are an obstruction and a menace to trade and as such are against the policy of the law. They attempt to contradict and to destroy the universally accepted and natural, as well as legal badge of ownership of chattels, which is possession. The law is most jealous in its protection of an innocent purchaser of a chattel for value without notice, who has relied upon possession as the badge of ownership.

*In re Mission Marine Associates, Inc., supra* at 681.

In an unpublished Bankruptcy Court Opinion which the United States Court of Appeals for the Third Circuit upheld, Judge Lipkin was unrelenting in his excoriation of the undisclosed lien:

One of the cardinal principles of the Bankruptcy Act is to create equality wherever possible among creditors of the bankrupts or debtors and to strike down secret liens.

\* \* \* \* \* \*

Not only does the Bankruptcy Act abhor secret liens, it frowns upon equitable liens (footnotes omitted). *In re Mission Marine Associates, Inc.*, No. B–79–01241 Slip op. at 19. (D.N.J. Aug. 17, 1979).

## VI.

In upholding a denial on application for reclamation of personal property, Judge Irving R. Kaufman, writing for the court stated, "the fundamental purpose of reorganization proceedings is to enable the debtor to continue operations as well as to protect the rights of creditors …" *In re Yale Express System, Inc.*, 384 F.2d 990, 991 (2nd Cir. 1967).

## CONCLUSION

Based upon the foregoing factual findings and legal conclusions, Plaintiff's complaint to modify the automatic stay so as to permit perfection of a lien is denied.

IT IS SO ORDERED. Let an order in conformity with this Opinion be submitted by the attorney for the debtor-in-possession.