In the Matter of ALKAP, INC., a N.J. corporation, Debtor.

ALKAP, INC., a N.J. corporation, Plaintiff,

v.

JOHN J. DEMAREST SUPPLY CO., INC., a N.J. corporation; North Jersey Building Supply Co., Inc., a N.J. corporation; Standard Roofing, Inc., a N.J. corporation; Nicholas Matera & Son, Inc., a N.J. corporation; and Midland Lumber & Supply, Inc., a N.J. corporation, Defendants.

Bankruptcy No. 82–1016.

United States Bankruptcy Court, D. New Jersey.

May 30, 1984.

Okin, Pressler Cohen & Hollander, Fort Lee, N.J., for debtor.

Breitenstein & Browne, Closter, N.J., for John J. Demarest Supply Co., Inc.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

Alkap, Inc. (Alkap), debtor and plaintiff in the instant proceeding, is a New Jersey corporation which was, in all relevant time periods, engaged in the construction of residential housing. Defendant John J. Demarest Supply Co., Inc. (Demarest), also a New Jersey corporation, was a supplier of construction materials to Alkap and others.

On April 2, 1982, an involuntary bankruptcy petition was filed against Alkap. On May 17, 1982, Alkap voluntarily filed for reorganization under Chapter 11 of the Bankruptcy Code.

In its complaint Alkap alleges that six payments made to Demarest on account of

deliveries to six construction sites during the month of February, 1982, constitute preferences under § 547 of the Bankruptcy Code. The parties have stipulated to the following schedule of deliveries and payments:

| Address | Date of Last Delivery | Date of Payment/Amount |
|---|---|---|
| 1.—116 E. Edsall Blvd. | 9/24/81 | 2/9/82–$5,000 |
| 4.—350 E. Harriett Ave. | 9/5/81 | 2/22/82–$5,000 |
| 5.—354 E. Harriett Ave. | 9/5/81 | 2/22/82–$5,000 |
| 7.—449 Jane St. | 10/29/81 | 2/4/82–$25,000 |
| 8.—447 Jane St. | 9/24/81 | 2/4/82–$25,000 |
| 9.—315 E. Ruby Ave. | 9/2/81 | 2/22/82–$10,000 |

The debtor concedes that payments 2, 3 and 6 were not preferential.

Although § 547 of the Code grants the power to avoid preferential transfers to a trustee, § 1107[a] of the Code extends that power to a debtor in possession.

It is factually undisputed that, during the summer of 1981, Alkap delivered to Demarest a series of promissory notes, each dated August 26, 1981 and each in the amount of $12,500, plus interest, with varying maturity dates. In addition, Alkap delivered to Demarest seven postdated checks, the first of which was dated November 30, 1981, the others dated at succeeding 15 day intervals. The checks and notes were dishonored upon presentation to the bank.

It further appears that Demarest had numerous accounts with Alkap and that it had supplied materials to a number of building sites, not all of which are directly involved in the instant proceeding; further, that the course of conduct between the parties included requests from Alkap that Demarest transfer obligations from one account to another and for subordination of its notice of intention against a particular property, so as to facilitate Alkap's sale of properties free of encumbrances. Demarest consistently complied with the noted requests. It is undisputed that Demarest did, in fact, file notices of intention against each of the six properties upon which the alleged preferential payments were made.

Under New Jersey law, defendant Demarest, as a material supplier, could have perfected materialmen's liens against Alkap. N.J.S.A. 2A:44–66 et seq. If any of Demarest's accounts upon which payment was made were, indeed, supported by a valid New Jersey materialman's lien, that payment, if made within the prescribed time limitations, would not constitute a preference. See § 547[c][6] of the Bankruptcy Code. Thus, to determine whether Demarest received the payments in question under a valid lien claim, the Court must look to New Jersey law.

N.J.S.A. 2A:44–71 provides:
Except as hereinafter in this section and in section 2A:44–75 of this title provided, no one shall be entitled to a lien under the provisions of this article for any labor performed or materials furnished prior to the filing, in the office of the proper county clerk, of a mechanic's notice of intention to perform such labor or furnish such materials.

N.J.S.A. 2A:44–91 provides:
Every person intending to claim a lien under this article shall, and no debt shall be a lien by virtue of this article unless the claimant shall, within 4 months after the date of the last labor performed or the materials furnished for which the debt is due, file his lien claim with the proper county clerk, as in this article provided.

Though it is undisputed that Demarest failed to file lien claims concerning the six properties itemized above within four months after the date of the last labor performed or materials furnished, Demar-

est contends that the six payments should not be considered to be preferential.'

■ With respect to the property located at 449 Jane Street, number 7 in the itemized listing, *supra*, Demarest's contention of nonpreferential status is valid. The February 4, 1982 payment of $25,000 by Alkap to Demarest was made within four months of the last delivery of supplies to that location, specifically, October 29, 1981. As noted in *Ricotta v. Burns Coal and Building Supply Co.*, 264 F.2d 749 (2d Cir.1959), a pre-Code case, a lien is filed in order to secure payment; thus, it follows that if the lien filing is not preferential, actual payment on the claim should not be so considered. The rationale of the Second Circuit holding retains its validity under the Bankruptcy Reform Act.

■ Despite the foregoing, Alkap argues that the notice of intention filed on this property by Demarest, pursuant to 2A:44–71, is defective under the statutory provisions due to the inadequacy of the description.

N.J.S.A. 2A:44–72 requires that a notice of intention shall contain:

b. A description of the land sufficient to identify it.

The Superior Court of New Jersey, in addressing the issue of description adequacy, held that property described as "Dunes Hotel & Casino Atlantic and Albany Avenues Atlantic City, New Jersey" was sufficient; *F.M. Weaver, Inc. v. Dunes Hotel & Casino, etc.*, 183 N.J.Super. 454, 444 A.2d 588 (App.Div.1982). The court stated that no particular form of description, such as by metes and bounds, is required. *Id.* at 457, 444 A.2d 588. In the case at bar, the notice of intention identified the property as "located on Jane Street, Fort Lee, New Jersey. Being lot 20 in block 4006." The Court finds such notice sufficient to identify the land despite the lack of a street number.

Since the notice of intention relating to 449 Jane Street was valid, and with payment on that claim having been made within the prescribed statutory time period, the payment is not preferential.

■ The remaining five payments on properties identified on the stipulated schedule of payments, *supra*, as numbers 1, 4, 5, 8 and 9, were received after the statutory time limitations of 2A:44–91 had expired. Furthermore, each payment occurred within 90 days of the filing of the first (involuntary) petition, April 2, 1982, and were otherwise tainted with the characteristics of a preferential payment. *See* § 547[b][1], [2], [3], [4] of the Code.

Demarest, arguing that to apply the four month statute of limitations for perfection of the materialman's lien to deem the above five payments as preferential would be inequitable, relies upon *Sheer Bros., Inc. v. Marlboro Home Builders, Inc.*, 156 N.J.Super. 451, 383 A.2d 1225 (L.Div.1978). *Sheer Bros.* involved a mechanic's notice of intention which had not been perfected within the time limitations of 2A:44–91, with the proceeds resulting from the sale of subject property escrowed for the benefit of the contractor, Sheer Bros., who then sued upon a book account rather than the mechanic's lien, to which the developer, Marlboro Home Builders, Inc., counterclaimed. Though the court refused to invoke the limitations of 2A:44–91 for the failure of the contractor to perfect its lien claim within four months, the court limited its holding specifically to the factual circumstances in that case. The court noted that invocation of the statute of limitations would allow the developer to regain the escrowed money before any decision on the merits of the contractor's book account or the developer's counterclaim, all of which precipitated the court's order that subject monies be paid to the clerk of the court pending a determination on the merits. The circumstances found in *Sheer* are distinguishable from the case at bar in that, unlike *Sheer Bros.*, we deal here with a bankruptcy proceeding wherein the "equities" involve not only the debtor and supplier, but third party creditors as well.

As stated in *Canright v. General Finance Corp.*, 35 F.Supp. 841 at 844 (E.D. Ill.1940), aff'd 123 F.2d 98 (7th Cir.1941),

"the purpose of the Bankruptcy Act is to bring about equality of division of assets amongst creditors. For the rule that to the diligent creditor belongs the reward, the act substitutes the rule that equality is equity ..." The Bankruptcy Code does alter this fundamental principle, as evidenced by the following: "the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally." *See* legislative history of H.R. 8200, H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), (Appendix 2 Collier on Bankruptcy, H.R.Rep. 595, pp. 177–78, 15th ed. 1983). Also see 4 Collier on Bankruptcy ¶¶ 547.01, 547.03 (15th ed. 1983). In the circumstances here, the rights of creditors should not be subordinated to the claim of Demarest, whose predicament results from its failure to perfect its lien. To hold otherwise would, indeed, constitute an inequity.

Demarest's other arguments as to payments 1, 4, 5, 8 and 9 are also unavailing. Demarest's contention that acceptance of postdated checks and promissory notes, at a time when it could have perfected its materialmen's liens, prevents the later payments from being preferential under the rationale of *Ricotta v. Burns Coal and Building Supply Co., supra,* is without merit.

The critical question is whether their acceptance by Demarest is equivalent to payment, so as to bring this transaction within the confines of the *Ricotta* case, *supra.* We believe that such acceptance is not equivalent to payment. A promissory note or postdated check constitutes no more than a promise to pay. The checks and notes were, in fact, dishonored. As Collier states, "It is the time of payment of a note that is the time upon which the elements of a preference must be predicated." 4 Collier on Bankruptcy ¶ 547.15 (15th ed. 1982). Since payment on the notes and checks was refused, the argument that receipt of the notes and checks was equivalent to the securing of a lien under *Ricotta* is unsup-

portable. Furthermore, when payment on the first check was refused in early December, Demarest had time to perfect any of its liens under N.J.S.A. 2A:44–91, but failed to do so. Similarly, when payment of the first note was refused, Demarest failed to exercise its then right to perfect the liens on properties # 1 and # 8. Demarest continually chose to accept the risk of debtor's nonpayment at a time when it could easily have secured payment through perfection of its liens.

Finally, Demarest argues that its entire course of dealings with the debtor constituted but one transaction, contending that, if it could have perfected any of its liens at the time of the February 1982 payments, all payments should be applied so as to operate against preferential status. Notwithstanding the course of conduct between the parties, whereby Demarest often transferred obligations from one account to another, and the use of materials on sites other than those to which the materials had been delivered, Demarest did maintain separate ledgers for the various sites and filed notices of intention for each separate property. In addition, Demarest often applied a lump sum payment from Alkap to various separate accounts. Demarest might have carried out its dealings with Alkap in a manner indicative of a single transaction, but failed to do so.

By reason of all of the foregoing, the Court finds that the following payments, made to Demarest on account of deliveries to the designated construction sites during the month of February, 1982, constitute preferences under § 547 of the Bankruptcy Code:

| | |
|---|---|
| 116 E. Edsall Blvd., Palisades Park, N.J. - | $5,000 |
| 350 E. Harriett Ave., Palisades Park, N.J. - | 5,000 |
| 354 E. Harriett Ave., Palisades Park, N.J. - | 5,000 |
| 447 Jane St., Fort Lee, N.J. - | 25,000 |
| 315 E. Ruby Ave., Palisades Park, N.J. - | 10,000 |

Submit an order in accordance with the above.