**In re KDR BUILDING SPECIALTIES, INCORPORATED, Debtor.**

**Bankruptcy No. 87–02946–LM11.**

United States Bankruptcy Court, S.D. California.

Aug. 13, 1987.

As Amended Aug. 14, 1987.

William M. Rathbone, San Diego, Cal., for debtor.

Sheri Joseph, San Diego, Cal., for creditor.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Debtor-in-possession, KDR Building Specialties, seeks an order of this Court holding Squires-Belt Material Company in contempt for willful violation of the automatic stay. Squires-Belt resists, arguing that no violation of the stay has occurred.

## BACKGROUND

Debtor is a subcontractor on construction jobs. Squires-Belt supplies materials to debtor. Debtor's schedules indicate Squires-Belt is its largest creditor, with a claim of approximately $129,000.

Debtor filed its Chapter 11 proceeding on April 24, 1987. Thereafter, Squires-Belt filed and served stop notices on the construction lenders and owners of property upon which construction was being performed by KDR. Squires-Belt also recorded preliminary notices of mechanics' liens against the owners on all jobs in which

debtor was delinquent in paying Squires-Belt.[1]

## ISSUE

Whether post-petition filing of stop notices pursuant to California Civil Code § 3156 *et seq.*, violates the automatic stay provisions of 11 U.S.C. § 362(a).

## DISCUSSION

Under California law, subcontractors and materialmen may serve a stop notice upon the owner or a construction lender of a construction site. Cal.Civ.Code §§ 3158, 3159. Upon receipt of the stop notice, the owner or construction lender must withhold from the general contractor sufficient money to pay the stop notice claimant. Cal.Civ. Code § 3161. *Connolly Dev., Inc. v. Superior Court of Merced County*, 17 Cal.3d 803, at 809, 132 Cal.Rptr. 477, 553 P.2d 637 (1976). If the owner or construction lender fails to withhold sufficient funds as required by the notice, it is personally liable to the claimant notwithstanding the absence of privity of contract. *Id.* The stop notice operates as a lien against the unexpended balance of the loan and survives foreclosure of a trust deed. *Miller v. Mountain View S & L Ass'n.*, 238 Cal. App.2d 644, 655, 48 Cal.Rptr. 278 (1965).

California law also provides a separate and distinct remedy for subcontractors and materialmen who furnish labor or material on a work of improvement in the form of a mechanic's lien. Under Cal.Civ.Code § 3123, a mechanic's lien constitutes a direct lien on the improvement and the real property to the extent of the interests of the owner or the person who caused the improvement to be made. This lien is subordinate to recorded encumbrances, but takes priority over all subsequent encumbrances. While mechanics' liens provide protection for materialmen where the owner of the property finances the improvements from his own funds, these liens can be wiped out by foreclosure of a construction lender's trust deed. *Connolly Dev.,*

*supra,* 17 Cal.3d at 808, 132 Cal.Rptr. 477, 553 P.2d 637.

In order to successfully assert a stop notice, a stop notice claimant must provide 20 days' preliminary notice under Cal.Civ. Code § 3160. Similary, in order to successfully assert a mechanic's lien, a material-man must file a preliminary notice with the owner, the general contractor and the construction lender within 20 days after furnishing the materials (Cal.Civ.Code §§ 3097, 3114) and record his claim of lien within 90 days of completion of the improvement.

Squires-Belt argues that construction funds in the hands of an owner or construction lender do not become property of a subcontractor debtor-in-possession's estate and, therefore, the automatic stay does not apply. In support of this position, Squires-Belt cites the opinion of the Bankruptcy Appellate Panel in *In re Flooring Concepts, Inc.*, 37 B.R. 957 (9th Cir. BAP 1984). In *Flooring Concepts,* Shaw Industries supplied carpeting to debtor for installation at an apartment complex. Debtor failed to pay Shaw and Shaw filed a preliminary 20–day stop notice under Cal.Civ.Code § 3097, and served the general contractor of the project. Thereafter, the general contractor paid Shaw directly. Several of these payments were made within the 90–day period prior to the filing of debtor's Chapter 11 petition. The trustee commenced an adversary proceeding to recover these payments as preferences under § 547. The bankruptcy court determined that these payments were preferences. On appeal, the Bankruptcy Appellate Panel reversed.

In reversing, the BAP cited long-standing Ninth Circuit authority [*Keenan Pipe & Supply Co. v. Shields*, 241 F.2d 486 (9th Cir.1956)], that payments made by a contract debtor of a bankrupt to a creditor of the bankrupt do not become part of the bankruptcy estate where there is an independent obligation on the part of the contract debtor to pay the creditor. Unlike the situation before this Court, the notice of

---

1. At oral argument, debtor's counsel conceded that filing of preliminary notices of mechanics' liens post-petition did not violate the automatic stay.

preliminary lien was perfected by Shaw *pre-petition.* Thus, while the *Flooring Concepts* case is helpful in some regards, it is not as directly applicable as Squires-Belt represents.

Squires-Belt also cites *Loyd v. Stewart & Nuss, Inc.,* 327 F.2d 642 (9th Cir.1964) for the proposition that a construction fund does not become property of a subcontractor's estate. A fair reading of the *Loyd* case may support this proposition. However, since all of the events surrounding the dispute in *Loyd* occurred not only post-petition, but also post-plan confirmation, the decision is not instructive on the issue of whether filing a stop notice post-petition to collect a pre-petition debt violates the automatic stay.

Debtor argues that post-petition filing of stop notices by Squires-Belt violates the automatic stay provisions of 11 U.S.C. § 362(a)(3), (a)(4) and (a)(5). In support of this position, debtor cites *In re Valairco, Inc.,* 9 B.R. 289, 7 B.C.D. 374 (Bankr.D.N.J. 1981). In *Valairco,* several creditors of a debtor-in-possession subcontractor filed stop notices under New Jersey law after debtor's Chapter 11 petition was filed. One of the creditors sought a determination from the Bankruptcy Court that the automatic stay provisions of the Code did not apply to the filing of stop notices under 11 U.S.C. § 546(b).

11 U.S.C. § 362(b)(3) excepts from the automatic stay provisions of § 326(a), "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546(b) of this title ...." The *Valairco* court reviewed New Jersey state law and determined that the filing of a stop notice did not relate back to the time when goods or services were first furnished. (At 295). Accordingly, the court ruled that the § 362(b)(3) exception did not apply because "state law afforded no protection to the holder of a stop notice lien perfected subsequent to the intervention of bankruptcy." *Id.*

Section 546(b) provides as follows:

The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

The legislative history of this subsection sheds some light on its operation.

The phrase "generally applicable law" relates to those provisions of applicable law that apply both in bankruptcy cases and outside of bankruptcy cases.... The purpose of the subsection is to protect, in spite of the surprise intervention of a bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection. It is not designed to give the states an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases. S.Rep. No. 989, 95th Cong., 2d Sess. 86, reprinted in 1978 *U.S.Code Cong. & Admin.News* 5872.

Thus, if California law provides for the stop notice remedy to relate back to the date that services were first performed, a stop notice may be perfected under § 546(b) since "generally applicable law" would permit it.

Squires-Belt argues that the California stop notice procedure differs from the New Jersey scheme in that stop notices relate back to the date the work was first performed. In support of this position, Squires-Belt cites Cal.Civ.Code § 3167(b), which provides:

If the money withheld or required to be withheld pursuant to any stop notice shall be insufficient to pay in full the valid claims of all persons by whom such notices were given, the same shall be distributed among such persons in the same ratio that their respective claims bear to the aggregate of all such valid claims. Such pro rata distribution shall be made among the persons entitled to share therein without regard to the order of time in which their respective notices may have been given or their respective actions, if any, commenced.

Since § 3167(b) allows a stop notice claimant to share in the distribution of funds from a construction lender *without regard* to the order in which the stop notices are filed, it appears that the California Legislature intended for the stop notice to relate back to the time when the work was first performed.

This construction comports with the unambiguous language of the statute and promotes the comprehensive legislative scheme intended to protect laborers and materialmen. As the California Supreme Court noted:

> The mechanics' lien derives from the California Constitution itself; the Constitution of 1879 mandated the Legislature to grant laborers and materialmen a lien upon the property which they have improved; no other creditors' remedy stems from constitutional command. Indeed this state, from the earliest days, and consistently thereafter has asserted its interest in protecting the claims of laborers and materialmen. In 1850 the first session of the California Legislature enacted a mechanics' lien law. Moreover, the courts have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen. When the practice of recording a construction loan trust deed before the commencement of construction reduced the effectiveness of the mechanics' lien, the courts and the Legislature evolved alternative remedies—the equitable lien and the stop notice—which attach directly to the loan fund.

> This protective policy continues to serve the needs of the construction industry. As was pointed out in *Cook v. Carlson, supra,* 364 F.Supp. 24, 29 [ (D.C.S.D. 1973) ]: "Labor and material contractors [in the construction industry] are in a particularly vulnerable position. Their credit risks are not as diffused as those of other creditors. They extend a bigger block of credit, they have more riding on one transaction, and they have more people vitally dependent upon eventual payment. They have much more to lose in the event of default. There must be some procedure for the interim protection of contractors in this situation." *Connolly Dev. Inc., supra,* at 826–7, 132 Cal.Rptr. 477, 553 A.2d 637 (citations omitted)

In the absence of any contradictory California authority on this point and given the strong legislative desire to protect materialmen, this Court concludes that the California stop notice scheme is intended to relate back to the date that services are first performed.

Accordingly, a stop notice may be perfected under § 546(b) without violating the automatic stay provisions of § 362(a). Counsel for Squires-Belt is directed to prepare an order in conformance with this Memorandum Decision within ten (10) days form the date hereof.